Judge GIrimke
delivered the opinion of the court:
There is a clear distinction between a will and a deed in regard to the words which are necessary to carry a fee. The rigid rules of interpretation which are applied to the last have never been ■considered applicable to the former. The circumstances under which a will is generally made, and the necessity of consulting the intention of the devisor only, have long since relieved devises irom the strict rules of construction which are applicable to deeds. Nevertheless, some rules have been established, even in regard to wills; and these rules profess to consult, in the best possible man *372 ner, the intentions of the testator, as gathered from the whole will. Thus the word heirs is not necessary to carry a fee, but any words-which signify an intention to convey the whole interest of the testator are sufficient. Thus a devise of all my estate, all my interest, all I am worth, all my right, all my title, are sufficient to create an estate of inheritance. The general doctrine is, that if the-expressions made use of, denote only a description of the estate, and no words of limitation are used, then only an estate for life' passes; but if they denote the quantity of interest which the testator possesses, then a fee passes. In the case of Hogan v. Jackson, Cowp. 299, the testator devised to his mother all the remainder and residue of all the effects, both real and personal, which •he should die possessed of, and the question was, whether she took a fee in the fee simple estate of the devisor? Lord Mansfield said, “the natural and true meaning of real effects, in common language and speech, is real property and he decided that the testator intended that his mother should take the whole of his property.' In Huxtess v. Brooman, 1 Br. Ch. 437, the devise was to three persons, “ all I am worth,” except §20. The chancellor held that these words, without any others of larger signification; superadded to them, were sufficient to pass real as well as personal estate. In Whaley and others v. Jenkins, 3 Des. 80, there-were no words of inheritance, and no word which had before been construed to carry a fee simple. The testator merely gave his-two tracts of land, to be equally divided between his two sons^. and these words were hold sufficient to pass the fee. This was followed up by the cases of Clarke v. Mikell, and Waring v. Middleton, 3 Des. 168, 249, in which the principle of the former decision was reiterated and enforced. It was said with great force, that the act abolishing the right of primogeniture, and placing, real and personal property on the same footing with personal, ought to change the rigor of the rules which require words of inheritance or perpetuity to pass a fee.
In Jackson v. Pearson, 17 Johns. 381, where the words of the-will were “ my property, after my debts are paid, I leave and bequeath,” without any words to control and explain them, were held to pass the real estate of the testator in fee. A decision equally broad was made in Hungerford v. Anderson, 4 Day, 371, and in Morrison v. Semple, 6 Bin. 94, where the testator gave to his son-in-law “ all his real and personal property,” it wes held *373 that these words denoted the interest of the testator, and not merely a description of the subject devised.
These are some of the leading eases on this subject. A review of all the authorities, English and American, would show that the latter have gone much farther than the former in giving effect to the intention of the testator, and for a very good reason. In America, the law of primogeniture is universally abolished, real and personal property are placed more nearly on a footing with each other, and the heir is no longer a favorite with the courts. The necessity of naming the heirs of the donee, in order to pass the inheritance, was uuknown to the Roman law. It was unknown even in England, before the Norman conquest, when the introduction of feifs first gave rise to the practice. The necessity for naming the heirs originated at a subsequent period, where the rulers of Gothic dynasties granted lands under condition of military service. These grants were sometimes made to the feuda■tory for life, and sometimes to his heirs. Whenever they were n ot specially named, the grant was only construed to be for life. Although this state of things in Groat Britain has long since passed away, yet it has influenced, more or less, the interpreta*■tion even of devises. In America, we have always been relieved from this artificial system, and from all the consequences which have followed in its train, and I think that a court in. Ohio ^should, very naturally, be guided by the American, rather than by the British authorities.
In the will before us, the testator devises to his son David one third part of all his land, and then he devises to his two other sons, Elijah and Joseph, each one third of his land,' dropping the word “all.” I should say that if the word “all” had been entirely omitted, that still the devise would have passed a fee in each instance. But can it be doubted that it was the intention of the testator not to die intestate of any part of his property. The word all used in the first instance, most clearly denotes this intention, and was only omitted in the devise to his two other sons, because it was very naturally deemed to be superfluous. I think, therefore, that Elijah took a fee under the will, and that the petitioners have no title as reversioners after the death of Elijah to demand partition of his proportion of the land, and of this opinion are a majority of the court.
Partition refused.