Brinkerhoee, J.
Counsel for the defendants have argued •this case, in behalf of their clients, at great length and with •much learning and ingenuity. They contend, in substance, •that the testator, in the use of the words, “should my youngest daughter, Margaret Harper, die without legitimate heirs,” he did nnimean the same as if he had said, “ should my youngest -daughter, Margaret Harper, die without legitimate” children, ■or other descendants, living at the time of her death; but that he did mean that the devise over to his son should take effect -only on what is called an indefinite failure, of issue; or, in •other words, at the time whenever, possibly in the far future, ■■the line of Margaret’s descendants should become extinct; so that the devise to. Margaret, instead of creating in her a fee simple estate, subject to be defeated by the contingency of -her dying without issue living at the time of her death, was a Revise to Margaret in tail; and so, under the statutes of this *327 state, vested in her, in effect, but a life estate, and in her immediate issue, an estate in fee simple.
In the case of Parish’s heirs v. Ferris et al., 6 Ohio St. Rep. 563, it was held, that “ when there is a devise in fee to A., but if he ‘ die without heirs,5 or ‘ without children,5 or ‘without issue,5 then to B. in fee, the words, ‘if he die without issue,5 or words of similar import, are to be interpreted according to their popular and natural meaning, and as referring to the time of the death of A., unless the contrary intention is plainly expressed in the will, or is necessary t<5. carry out its undoubted purposes.55
But we are now, in effect, asked to review and overrule that case.
We have given the elaborate and really able argument of counsel for defendants in the case before us, the best consideration of which we are capable; and we are unanimously of opinion that the case of Parish v. Ferris, must stand. That case, too, was strongly argued, and maturely considered; and the opinion of the court, delivered in the case, commends itself fully to the approbation of our judgments.
The arbitrary and artificial rule of construction, so long^ prevalent in the English courts, and so inconsiderately adopted .and followed in some of the states of our Union, that such expressions as “ dying without issue,55 and the like, meant an indefinite failure of issue, when first adopted in England, could be excused and accounted for, if not justified, on two grounds — first, that from the very structure of the English government and English society, it was a part of English policy to encourage the perpetuity of family estates; and, second, that there, estates tail were common, prevalent, and familiar to the mind of every testator. Here, on the contrary, the public policy is to'discourage perpetuities, estates tail are utterly unknown to the generality of our people, our laws forbid them, and every presumption is against the supposition of an attempt to create them. But, even in England, the courts again and again — oppressed Avith a sense of the violence which the rule was constantly doing to the clear and obvious intent of testators — expressed their regrets that *328 they were compelled to yield to its iron mandates, until they were finally relieved from it by act of parliament. So, too, in many of our states, in which the old English rule had been adopted, their legislatures have interfered for its abolition.
It would be a work of supererogation for us to repeat the argument in favor of the repudiation of the old English rule of interpretation, already so well stated by Swan, J., in Parish v. Ferris.
It is sufficient for us to say, that the arbitrary and artificial •rule of interpretation, contended for by counsel for the defendants in this case, has never become a rule of property in Ohio, and, therefore, we . are at liberty to fall back upon the simple and just inquiry as to what the testator really did mean by the language he has employed. That we are unwilling to adopt a rule regretted by the courts of the country in which it originated, and now abolished by its legislature; a rule which presupposes an intent to contravene the fundamental principles of our governmental and social policy ; and which, with few exceptions, would ignore and subvert the clear and manifest intent of the testator.
On the authority of Parish v. Ferris, then, we hold that the clause of the will of Robert Harper, relating to the limitation o.ver of the devise to his daughter, Margaret, must be considered as if the words, “living at the time of her death,” were added immediately after the words, “ legitimate heirs.”
It is admitted by counsel on both sides of this case — and indeed it can not be doubted — that the words, “legitimate heirs,” as used in this will, signify the same thing as if the testator had said, lawful issue, or legitimate heirs of her body.
Dismissing now, for the present, that clause of the will which provides for a limitation over in case of the death of Margaret without lawful issue living at the time of her death, we go back to the primary devise to Margaret, and inquire what estate she would have taken under the language of the devise, had there been no clause in the will making a limitation over?
In Smith v. Berry, 8 Ohio Rep. 365, it was held that the words, “ I also give unto my son, Elijah Berry, the other third *329 part of my land,” without words of inheritance, are sufficient in a will to pass an estate of inheritance. So, it was held in Thompson v. Hoop, 6 Ohio St. Rep. 480, that the words, “ I do also give and bequeath unto my son, Isaac, the above mentioned plantation,” without words of inheritance, are, in a will, sufficient to pass an estate of inheritance; and that, “ no words of perpetuity being essential in a will to pass an estate of inheritance, if the language used as descriptive of the estate be general, and sufficient to comprehend the whole property, without any words of limitation or provision in the will qualifying the interest devised, a fee in the land will pass.”
After giving to his son, Matthew, twenty-five acres from off his farm, the testator in this case, says: “ I give and bequeath unto my youngest daughter, Margaret Harper, the remaining part of my real property.”
On the authority of Smith v. Berry, and Thompson v. Hoop, this language, in the absence of other restrictive or qualifying provisions, is clearly sufficient to pass to Margaret, without express words of inheritance, an estate in fee simple; and in legal effect, the words are the same as if the testator had said, “I give and bequeath to my youngest daughter,' Margaret Harper, her heirs and assigns forever, the remaining part of my real property.” And this construction of the primary clause of the will is strengthened by the fact that the testator charges upon Margaret the payment of a share of a pecuniary legacy to his other daughter.
Nor is this construction precluded by the subsequent clause prescribing a limitation over to her brother in ease Margaret should die without issue of her body living at her death; for that clause does not refer at all to the quantity of the estate before devised to Margaret, but simply designates the contingency, on the happening of which, that estate, whatever was its quantum, should pass over to her brother.
The will of Robert Harper, then, so far as it relates to his daughter Margaret, construed in the light of the cases adjudged in Ohio — and, as we think, strictly in accordance with the real intent of the testator, as indicated by the language *330 which he employs — is, in substance, the same as if it were written thus:
“ I give and bequeath to my youngest daughter, Margaret Harper, her heirs and assigns forever, the remaining part of my real property.
“I give and bequeath unto my eldest daughter, Jane Harper, but since married, Jane Davis, if personally herself appearing, fifty dollars, to be paid by my eldest son, Matthew Harper, and my youngest daughter, Margaret Harper, according to the property given them in this my last will. It ¡s also to be understood that should my youngest daughter, Margaret Harper, die without any legitimate heirs of her' body living at the time of her death, her. part of my real estate shall fall to my eldest son, Matthew Harper.”
Now, what is the legal effect of a testamentary disposition couched in this language? We think we are safe in saying, that ever since the case of Pells v. Brown, decided in the reign of James I. (Cro. Jac. 590), it has been the established doctrine in England, that such a devise vests in the primary devisee a determinable fee simple, and not a fee tail; and on the happening of the contingency on which- the fee is to be determined, the estate passes over, not as a remainder, hut by way of executory devise. In that case the devise was “to Thomas and his heirs forever; and if Thomas died without issue, living William, then to William.” This was held to be a devise in fee to Thomas, and not an estate tail; the words “ living William/’ were thought sufficient to make the devise over to William an executory devise.
In Porter v. Bradley, 3 T. R. 143, the will was to my son Philip, in fee; but in case he “ shall happen to die, leaving no issue behind him,” then to his wife for life, and after, to , his son James. Kenyon, C.J., said, “ The general rules respecting limitations of this sort, have been for many yehrs well settled. The first question that arises in this case is, whether this is an estate tail, or in fee ? The first part of the devise to Philip, prima facie, carries a .fee ; for it is to him, his heirs, and assigns forever; but it is clear, that these words may be restrained by subsequent ones so as to carry *331 only an estate tail. And a long string of cases may be cited» in order to show that where an estate is limited to a man and his heirs forever, and if he die without leaving heirs, then to his brother, or to any person who may be his heir; those words shall not have their full legal operation, but shall be restrained to heirs of a particular kind, namely, heirs of the body. If the subsequent part of this devise had been, ‘ and in case he shall die without issue, then over,’ it would have given to Philip an estate tail, which he might have barred by the recovery.” And so it would, under the construction of the words, “ die without issue,” then prevalent in England, but since changed by act of parliament there, and never adopted here. He adds: “But here the words are, ‘but in case he shall happen to die, leaving no issue behind him;’ which makes a material difference, and brings it within the case of Pells v. Brown, which is the foundation, and, as it were-, thé magna eharta of this branch of the law. This question arose soon after executory devises were first taken notice of, which was in the reign of Queen Elizabeth. And that doctrine has never been since doubted by the court of law.”
Anything approaching to a particular notice, in this opinion, of all the cases, English and American, bearing upon this- question, would be tedious, and would devolve upon us an amount of labor which, in view of other duties, we can hardly be expected to perform. We, therefore, content ourselves with citing a few. Doe ex dem. King v. Frost, 3 Barn. & Aid. 546; and Ex parte Davies, etc., 9 E. L. & E. 88—a case very closely in point, and decided in 1851-2. In the case of Abbot v. Essex Company, decided in 1855 (18 Howard, 202), this question was before the supreme court of the United States. In that case, the following was the clause of the will: “I give to my two sons, viz., John and Jacob, all my lands, etc., live stock, etc., tools, etc., bonds, etc.,- to be equally divided between them, and the executor is ordered to pay debts out of that part of the estate. Item. — It is my will that if either of my said sons, John and Jacob, should happen to die without any lawful heirs of their own, then the share of him who may first decease, shall accrue to the other *332 survivor and his heirs.” And it was unanimously held, that this “gave an estate in fee simple to John and Jacob; and the share of the one who first died without issue, passed over to the other son by way of executory devise.” See, also, Jordan v. Roach, 32 Miss. Rep. 481, where the subject is discussed at great length, and with much learning and acumen.
Among the courts of the different states of this Union, while varying constructions have been placed upon the words “ dying without issue,” “ dying without heirs,” “ dying without children,” and the like — some adhering to the old English construction, and holding them to mean an indefinite failure of issue, and others, either in obedience to statutory mandate or otherwise, repudiating that construction, hold them to mean a definite failure of issue, that is, a failure of issue living at the death of the first devisee — with the single exception of the courts of Connecticut, we believe the cases are uniform and without exception in support of the doctrine, that where the words of the will clearly import a devise to the primary devisee and his heirs general, and in case of his death without issue living at the time of his death, the primary devisee takes a fee simple, subject only to be determined by the happening of the definite failure of issue provided for. And the cases in Connecticut, we can not follow; because, first, they are exceptional — opposed to the general current of authority; and, second, because their rules of construction, if followed, would, as we think, be far less likely to effectuate the actual intentions of testators; which, so far as may be, consistently with public policy, is, or ought to be, the leading object in the construction of all testamentary instruments.
If we are right in these conclusions, the children of Margaret Harper have no proper claim against the plaintiffs, who hold the lands devised'to Margaret under a conveyance from her; and they are entitled to be quieted in their title as against such claims.
Judgment for plaintiffs.
Scott. C.J., and Sutliee, Peck, and Gholson, J J., concurred.