R. B. DUNN ET AL. v. LOVITT HINES ET AL.

(Filed 13 December, 1913.)

1. **Wills—Interpretation—Intent—Rules of Construction.**
    In construing a will, where there is doubt or ambiguity, the true intent and meaning of the testator should be gathered from the entire instrument, in accordance with the rules of law established for the purpose.

2. **Same—Heir at Law.**
    A will should not be so construed as to disinherit the heir unless this has been done by express devise, or from necessary implication from the terms of the will.

3. **Wills — Interpretation — Intent — "Unmarried" — Words and Phrases.**
    Where a devise is made contingent upon the devisee being "unmarried," etc., the word used must be construed with the context and as a part of it; for expressions of this character are not inflexible in their meaning and by proper interpretation should carry out the intent of the testator as gathered from the will.

4. **Wills—Interpretation—Intent—Devisee First Named.**
    The first taker in a will is presumably the favorite of the testator, and in doubtful cases the gift is to be construed so as to make it as effectual as to him as the language of the will, by reasonable construction, will warrant.

5. **Wills — Interpretation—Intent—Contingent Limitations—Vesting of Estates.**
    The law favors the early vesting of estates, to the end that property may be kept in the channels of commerce. Hence a

future or executory limitation under a devise in a will will not be construed as contingent, when, construing the will as a whole, it appears that the intent of the testator was that it should be deemed as vested.

6. **Wills—Interpretation—Intent—Contingent Limitations—"Unmarried"—Children of Age—Vesting of Estates.**

A testator devised his lands to his several children, and first, a certain tract of land to his wife for life, then to his daughter C. "during her natural life; and should she marry and have children to arrive at the age of 21 years, then to my said daughter and her children then living, etc.," in fee simple; and if my said daughter should die without marriage and children of the age of 21," etc., then with limitation over to a son who was later provided for in the will. The widow of the testator being dead, and the daughter C. being alive and having several children, one of whom had arrived at the age of 21 years, it is *Held*, that in accordance with the intent of the testator as gathered from the terms of the will, the fee simple had vested in C. and her children as tenants in common, and that they may convey an absolute fee-simple title to the land; and, further, that the arrival at full age of any one of the children was sufficient to vest the estate.

APPEAL by defendants from *Whedbee, J.,* at December Term, 1912, of JONES.

Controversy submitted upon an agreed state of facts, as follows:

1. That E. B. Isler, late of the county of Jones, some time before 27 April, 1891, died, leaving a last will and testament, which was duly and regularly admitted to probate in said county, a copy of which is hereto attached and made a part of the case. The second item of the will, which is the material one in this matter, is as follows: "I give to my wife, Susan C. Isler, the tract of land in Jones County on which I live, during her natural life or widowhood, and in consideration thereof she is to raise and educate my daughter, Carrie F. Isler; and at the death or marriage of my said wife, then I give said tract of land to my said daughter, Carrie F. Isler, during her natural life; and if she shall marry and have children to arrive at the age of 21 years, then my said daughter and her children then living, together with the children of any deceased child, shall

have tract of land absolutely in fee simple forever. And if my said daughter should die without marriage and children of the age of 21 years or bodily heirs of such children, then I give said tract of land to my son, William B. Isler, during his natural life, then to his children absolutely and in fee simple forever."

2. That Susan C. Isler, named in the second item of the will, is dead; Carrie F. Dunn, named in said item, intermarried with her coplaintiff, R. B. Dunn, and as a result of the marriage there have been born the following children: Paul W. Dunn, Lillian F. Lee, Robert I. Dunn, Maude Rountree Dunn, W. Edwin Dunn, Carrie May Dunn, and Sam Augustus Dunn, all of whom are made parties hereto; that of the children, Paul W. Dunn became 21 years of age on 24 October, 1913; that the other children are all under the age of 21, and one of them, to wit, Lillian F. Lee, has intermarried with A. S. Lee, and the said A. S. Lee is also made a party plaintiff hereto; that further, the said R. B. Dunn and wife have had no children to die leaving children up to the date when Paul W. Dunn became 21 years of age, or up to the date of this proceeding.

3. That the estate of E. B. Isler has been fully administered and settled, and in the course of such administration a portion of the lands set out in the second paragraph of his will was duly and legally sold for the purpose of paying his debts under a decree of the Superior Court of Jones County, entered at November Term, 1893, in an action therein pending, entitled "Mrs. S. C. Isler, executrix, v. W. B. Isler *et al.*," the lands so sold being fully set out and described in a deed from S. C. Isler, executrix, to Carrie F. Dunn, of record in Jones County, book 39, page 339, to which reference is made; and this action has no reference to the land contained in said deed, but has reference only to the remaining lands mentioned in the second paragraph of the will of E. B. Isler, deceased, after excluding the lands described in the above mentioned deed, which remaining lands it is agreed are susceptible of a specific and certain description, but are known as the lands on which E. B. Isler lived, or the E. B. Isler home place.

4. It is further alleged in the case agreed that proceedings have been duly instituted and prosecuted for a sale of the said land so remaining unsold, which are in all respects regular and confer a good title, provided plaintiffs are the owners as tenants in common of the said land under the will of E. B. Isler, by a fair and legal construction of the second item of the same. That defendants have duly entered into an agreement to buy said land, under the order of the court appointing a commissioner to sell the same and make title to the purchasers, but decline to pay the purchase money and take a deed for the land, upon the ground that the title is defective, the estate of plaintiffs not being an absolute one in fee simple, but contingent upon the death of Mrs. Dunn unmarried and without children. The court adjudged that a good title can be made, as the plaintiffs are the owners of the land in fee simple absolute, and required the purchaser to accept the title and the deed therefor upon the terms as to payment of the purchase money stated in the judgment. Defendants appealed.

*G. V. Cowper for plaintiffs.*
*Rouse & Land and Loftin & Dawson for defendants.*

WALKER, J., after stating the case: The question turns upon the point as to what meaning we will give to the words of the settlement, "without marriage and children of the age of 21 years or bodily heirs of such children," for there is an ulterior or alternative limitation in the form of an executory devise, to the testator's son, William B. Isler, and should those words be construed to mean that if Carrie F. Isler (now Mrs. Dunn) dies a widow and without leaving children, the estate could not vest absolutely in any one until her death, but would remain contingent until that event takes place. But we do not think this can possibly be the meaning, in view of the context of the will.

The main purpose in construing a will, where there is doubt or ambiguity, is to ascertain the true intent and meaning of the testator, and in doing so we must be governed by the rules of law established for the purpose; otherwise, we would be in no

better case than if traversing an unknown sea without rudder or compass, and in each particular case the court deciding it would be a law unto itself, without anything reliable or stable to guide it. One of those rules is, that we must look at the whole will, so as to take a broad and comprehensive view of it, and not a narrow or partial one, which would so restrict its meaning as to defeat the clear intention. Underhill on Wills, sec. 464. There is a cardinal rule, also, that the heir should not be disinherited except by express devise or by one arising from necessary implication, by which the property is given to another, though the right of the testator to omit the heir from his will is not to be denied or curtailed. *Ibid.,* sec. 466. There are other rules of more or less importance. Applying those we have mentioned to this will, what is the result?

The principal objects of this testator's bounty in this devise were undoubtedly his wife, his daughter, and her descendants. His primary intention clearly was that the land should go to his daughter and her children after his widow's death. How will we best execute this dominant purpose? Surely not by holding that the quoted words mean the death of his daughter without *then* having a husband and children, for the happening of such an event would carry the estate to his son, who gets his share under another clause of the will, and might leave others who would have been the testator's descendants and lineal heirs and equally entitled to his bounty, reduced to penury and to become objects of charity. This, if not absurd, would be contrary to all rules of humanity and to those common instincts of love and affection which ordinarily control our actions. Not that a testator is required to be a humanitarian, but that he is supposed to be influenced by natural motives, and he was, because the manifestly leading idea of the will is equality among his children and their descendants. This testator has done what we would expect of him under his surroundings and circumstances. His evident intention was to prefer his daughter and her children to his son, for whom he had already provided, and therefore in the first limitation he declared that if his daughter Carrie should marry and have children, who attained to the age

of 21 years, *then* she and her living children and the children of any deceased child should have a fee simple in the land absolutely. What does this mean? What else can it mean than that the estate is to vest absolutely in fee, in the lifetime of his daughter, when she married and had such children, for he says, in so many words, it shall "then" vest. The limitation over was clearly intended to refer to the nonhappening of the very same event, which is, that at her death, if she should not have been married and should not have had children, so that the estate had not already vested absolutely, then and in that case it should go over to his son. What reason can be assigned for his changing the nature of the event? If the first one named had happened, whereby the estate had vested, why should he wish to nullify this provision by substituting another and very different one? He may do so; but has he done so? is the question. We think not. But we are not confined to mere reasoning against such a probability, for the authorities are strongly with us in our view.

A limitation expressed in the same words was before the Court of Chancery of England in 1861 for construction, in the case of *Heywood v. Heywood,* 30 L. J. Equity, 155, where it was held, *Sir John Romilly,* Master of the Rolls, delivering the opinion, "that a gift over, in the event of daughters dying unmarried, meant 'without ever having married,' and that the superadded words, 'and without issue,' meant 'without ever having any issue,' and the event having happened, the interests had vested, and the children, on whose behalf appointment had been made, were entitled to the fund." But it must not be understood that these words, "unmarried" or "without marriage" and "without children," have this inflexible meaning. On the contrary, they must be construed with the context and as a part of it, in the light of all the words of the gift and according to the obvious intention of the party using them. "The word 'unmarried' (and any equivalent expression, of course) is a flexible term, and the meaning is to be ascertained, not by any strict rule applied to the term itself, but according to the sense of it where the word is used." *Maughan v. Vincent, 9 L. J.*

(1840-41) Equity, 329 (opinion by *Lord Cottenham*). These words were there given the other meaning, that is, "a dying not then being in a state of marriage," because to give it the ordinary meaning of never having been married would exclude the heir in favor of the ulterior devise, who was the husband. It was held, though, in *Mertens v. Walley* (sub. nom. *In re Sergeant*), L. R. 26, ch. 575, decided in 1884: "Although the word 'unmarried' is one of flexible meaning, and may mean either 'never having been married' or 'not having a husband,' at the time when a gift is to take effect, the former is the primary or natural meaning, and in the absence of any context showing a different intention, the word will be so construed." The word "unmarried," or its equivalent, was also held, in *Dalrymple v. Hall,* L. R. 16, Ch. (1880-81), p. 715, to mean "never having been married," according to the ordinary and primary sense of the term, and in the absence of context showing a contrary intention, "and the gift to the children of testator's brother, therefore, did not take effect." See Underhill on Wills, sec. 478. The authorities show that the courts have been influenced largely by the particular circumstances of the case and the terms in which the intention of the testator is expressed. Further reference may, therefore, be made to those cases as indicating a clear drift of sentiment towards our conclusion, although in some of them the other meaning was given to the words, because of qualifying words, such as "a dying without being married or leaving children." *Maberly v. Strode,* 3 Vesey, Jr., 450 (30 English Reports, Full Reprint), Ch., p. 1100; *In re Norman's Trust,* 3 De G., McN. and G., star p. 965; *Bell v. Phyn,* 7 Vesey, Jr., 453; *Wilson v. Bayly,* 3 Brown H. of L., 195 (1 Eng. Rep., Full Reprint, p. 1265).

In *Pinbury v. Elkin,* 1 Peere Wms., 564 (24 Eng. Reports, 518), the *Lord Chancellor (Parker)* said the words "dying without issue" had several senses. Our case falls under the second of these, which is:

"Second. Another sense of dying without issue was, if the party died without ever having had issue, and that was the sense put upon these words in the case of *Brett v. Pildridge,* cited in

1 Sid., 102, and in 1 Keb., 248, 462, where a man gave a portion with his daughter in marriage, and the husband covenanted with the father-in-law to repay him £500 part of the portion, if the daughter should die without issue within two years after the marriage; the daughter had issue within two years, but she, and afterwards her issue, died without issue within the two years; and the case coming on in chancery was referred to the opinion of four judges, who all held that the father should not have any of the portion back again, in regard there *once* had been an issue of the marriage. *Bell v. Phyn,* 7 Ves., 453."

We need not stop to consider whether the word "and" in the phrase, "should die without marriage and children," should be construed as a copulative or disjunctive conjunction, as in *Bell v. Phyn, supra,* for here both events have taken place, as the daughter, Carrie F. Isler, was married and had children, one of whom has attained to full age.

But there are other important rules of interpretation that should be applied to ascertain the real intention. The first taker in a will is presumably the favorite of the testator. *Rowalt v. Ulrich,* 23 Pa., 388; *Appeal by McFarland,* 37 *ibid.,* 300, and in doubtful cases the gift is to be construed so as to make it as effectual to him as possible or as the language will warrant. *Wilson v. McKeethan,* 53 *ibid.,* 79. And, too, the law favors the early vesting of an estate, to the end that property may be kept in the channels of commerce. Underhill on Wills, sec. 861; *Hilliard v. Kearney,* 45 N. C., 221; *Galloway v. Carter,* 100 N. C., 111, and cases there cited. "No future or executory limitation will be regarded as contingent which may, consistently with the intention of the testator gathered from the whole will, be deemed vested." Underhill on Wills, sec. 861.

If we construe this will according to these rules, we find that the testator favored his daughter and her children in preference to his son, as to particular property, and his first solicitation was for them and their interests. He therefore provided for an early vesting of their interests, when his daughter should marry and have children, and as soon as they (meaning, of

course, one or more of them) should become of full age. These two events happened, and the limitation over is made to depend not upon the situation at her death, whether married or a widow, or then having children, but upon the prior happening of the two contingent events. If we should hold that there must be children of age at the death of their mother, it would altogether exclude them from the testator's bounty, if those left were under age at that time, in favor of his son, William B. Isler, who had already been fully provided for in other parts of the will. These facts show conclusively that the testator intended that the estate should absolutely vest in his daughter and her children as soon as there was a child of full age. This interpretation agrees with the rules, that there should be an early vesting of the estate; that the testator is not presumed to intend a disinheritance of a part of his heirs, the first objects of his bounty, by a contingent limitation, especially in favor of another, for whom, it seems, ample provision is made by the will. This is most in accordance with the intention, to be collected from the whole will, and is evidently what the testator really meant. It was the failure of the particular events described in the first limitation that was to render effectual the second or ulterior one. It was held in *Chrystie v. Phyfe,* 19 N. Y., 351, "that terms used in making a mere substitutional disposition of an estate should not be applied so as to alter what is before clearly expressed in reference to the same matter."

The persons interested in this vested estate have been made parties. If there were any contingent interests among those first designated as beneficiaries, excluding the ulterior devisees, the sale under the judicial proceeding would pass a good title, under the doctrine of class representation and the acts of 1903, ch. 99; Revisal, secs. 1590, 1591. *Springs v. Scott,* 132 N. C., 563; *Anderson v. Wilkins,* 142 N. C., 159; *Trust Co. v. Nicholson,* 162 N. C., 257.

We conclude that the judgment was correct and that the defendants must comply with the same.

Affirmed.