CITIZENS BANK v. MURRAY ET AL.

(Filed 22 December, 1917.)

**1. Wills—Estates—Contingent Remainders—Intent.**

Where an estate by will is limited over on a contingency and no time is fixed for the contingency to occur, the time of the testator's death will be adopted unless a contrary intent appears from the terms of the will, etc.

**2. Same—Event—First Taker.**

Where an estate by will is limited over on the "death of the first taker without issue," these words, without more, will be given their primary and natural significance and effect the estate with a contingency during the entire life of the first taker, unless there be a contrary intent appearing from a proper interpretation of the instrument.

**3. Same—Interpretation.**

Both of the positions are subject to the controlling principle that the intent of the testator, as expressed by the terms of the will, must be given effect unless in violation of law; and when it appears from a perusal of the will and the circumstances relevant to its proper interpretation, that a different time was intended, such time must always prevail.

**4. Wills—Ambiguity—Interpretation — Intent — Estates — Early Vesting— Object of Testator's Bounty.**

Where ambiguity occurs in the terms of a will, permitting construction, the courts, in its interpretation, will favor that which makes for the early vesting of estates, and the first taker is ordinarily to be considered as the primary object of the testator's bounty.

**5. Same—Contingent Remainders.**

A testator leaving a will disposing of a large estate in real and personal property, chiefly the latter, and with large lumber interests, after bequeathing certain legacies to others, enjoined upon his son, his only child, to help his executor in the management of the property and stated that he, to whom the rest of the property was devised and bequeathed, would "naturally fall heir to everything outside of the annuities, and should he not marry or even marry and have no issue, then one-half of what he is worth goes to the three children of M. in fee": *Held*, the son

was the primary object of the testator's bounty, and, under the circumstances, the event to determine his absolute ownership of the property was that of his marriage and having living child or children thereof. *Buchanan v. Buchanan*, 99 N. C., 308, cited and distinguished.

CIVIL ACTION to obtain construction of a will, heard before *Lane, J.,* at April Term, 1917, of BUNCOMBE.

On the hearing it was made to appear that George A. Murray had died resident in said county, leaving a last will and testament composed of an original and two codicils thereto, disposing of a large estate consisting of real and personal property, chiefly the latter, and appointing plaintiff bank executor. Certain controversies having arisen as to the meaning of said will and codicils, the present proceedings were instituted to obtain an authoritative construction of same, all of the parties in interest having been made defendants.

The said will made provision for the payment of various legacies and annuities, among others, one of $10,000 to W. H. Murray, his son and heir, and an annuity of $600 per annum for his life. Another legacy of $1,000 is given to his brother, J. B. Murrell, of Rogersville, Tenn., and others of $2,000 each to the three children of said brother, to be paid after the death of the testator's sister, and an annuity of $300 for life after the death of an aunt, Mrs. Hutchinson. Having made these preliminary bequests and others, as stated, on matters more directly relevant, the will and first codicil are as follows:

"It is my will and desire that upon the death of any of the annuitants hereinbefore mentioned that such annuities shall be paid to the surviving annuitants, except in those cases where it has otherwise been hereinbefore provided. And upon the death of all the annuitants then it is my will and desire that all my property shall go to my son, W. H. Murray, his heirs, executors or administrators.

"It may be that after my estate is put in shape and after paying the above bequests that the annuities can be increased, in which case all annuities are to be increased pro rata accordingly.

"I prefer that my stock in the Citizens Bank and the Citizens Lumber Company be held intact by my executor, and that the dividends be collected and used in the payment of the above mentioned bequests and annuities as long as the same continue to pay good dividends.

"It is my will and desire that J. E. Fulgham be employed by my executor to coöperate with my son, W. H. Murray, in closing up my lumber business, and to aid my executor in the sale of my Wesser Creek lands in Swain County, N. C., and my timber lands at Lone Star, S. C., or any other timber or timber lands that I may own, and that my son, W. H. Murray, and Mr. Fulgham shall be paid a reasonable compensation for their services in doing said work, or at least that said Fulgham

shall be employed to aid in closing out said lumber business and in the sale of said timber and timber lands so long as he and my said executor and my son, W. H. Murray, can agree.

"As a part of my assets consist of notes secured by real estate, and as it will necessarily be many years, on account of the numerous annuitants, before my estate can be wound up, it is my will and desire that my executor shall collect so much money as will be necessary to meet the payments of the bequests and annuities herein provided for and shall sell and dispose of my real estate and personal property as it may deem advisable to do so, and after paying the bequests and annuities aforesaid then reinvest the funds by taking notes secured by real estate or discount good notes secured by real estate worth double the amount of the loan, or invest the same in unquestionably good interest-paying bonds or other good securities, but the loans or paper secured by deed in trust on good real estate as above are preferred. I request my son, W. H. Murray, and enjoin upon him the duty of coöperating with my executor in looking after and preserving my estate, which ultimately goes to him and his heirs after the falling in of the annuities, and to see that the provisions of my will are fully carried out.

"I hereby nominate, constitute, and appoint the Citizen's Bank of Asheville, N. C., as executor of this my last will and testament, hereby revoking all former wills and testaments.

"Codicil to my last will now in my private box at Citizen's Bank—copy in right-hand drawer of my desk in envelope marked Mrs. A. M. Ross. In the above mentioned will Veda Merrimon McFatridge, 122 W. 30th St., Indianapolis, was made an heir to the extent of $240 per year—$20 per month—I wish to increase that to $30 or $360 per year, to be paid to her her natural life.

"My son Will naturally falls heir to everything outside of the annuities—should he not marry—or even marry and have no issue, then one-half of what he is worth goes to the three children of J. B. Murrell in fee.

"The household furniture is to be divided between my sister, Mrs. Ross, and Will Murray, my son, and especially is the matter of leaving to and for my sister's use any and sufficient funds to keep her in comfort and plenty the rest of her life, the estate which is worth near one hundred thousand dollars, should be ample for all these.

"The one thousand paid-up insurance policy in New York Life shall go to my brother, J. B. Murrell, in addition to the other thousand left him, and my old Aunt Nattie N. must never want for anything.

"I want the people mentioned to get the benefit of the money, and I ask and request Will Murray to carry out and see carried out to the best of his ability my wishes.

"Get J. E. Fulgham to help close out lumber and timber business; he should be paid well for this."

The second codicil is in no way material to the enquiry.

It was further made to appear that, since the death of G. A. Murray, his son and heir has married and had issue born alive of said marriage, which issue is still living.

Upon this statement, one and chief of the questions presented is whether, under the second clause of the codicil, the interest bequeathed and devised to W. H. Murray became absolute on his marriage and the birth of issue, or is same affected with a contingency in favor of the children of J. B. Murrell as to one-half of the estate until the decease of W. H. Murray, the first taker, without issue surviving. The court being of the opinion that the estate of W. H. Murray, on his marriage and birth of issue, became absolute, entered judgment so construing the will, and the children of J. B. Murrell, nephews and nieces of the testator, excepted and appealed.

*J. D. Murphey and Garland A. Thomasson for appellants.*
*R. M. Wells and J. E. Swain for W. H. Murray, appellee.*

HOKE, J, after stating the case: From the facts stated in the record and on the argument, it appears that all matters of controversy growing out of the will of the testator have been satisfactorily adjusted except the one question whether, under the codicil and the facts and circumstances properly relevant to its construction, the estate of W. H. Murray became absolute on his marriage and the birth of issue of the marriage, which issue is still living.

Subject to the position that the intent and purpose of the testator, as expressed in his will, shall always prevail except when the same is in violation of law, it is a recognized rule of interpretation with us that when an estate by will is limited over on a contingency and no time is fixed for the contingency to occur, the time of the testator's death will be adopted, unless it appears from the terms of the will that some intervening time is indicated between such death and that of the first taker. *Bank v. Johnson,* 168 N. C., 304; *Dunn v. Hines,* 164 N. C., 113; *Galloway v. Carter,* 100 N. C., 111; *Price v. Johnston,* 90 N. C., 593; *Vass v. Freeman,* 56 N. C., 221; *Cox v. Hall,* 17 N. C., 121.

Our decisions further hold that in case of ambiguity in the terms of the will, permitting construction, the courts will favor the interpretation which makes for the early vesting of estates and that the first taker is ordinarily to be considered as the primary object of the testator's bounty, a position more insistent when such first taker is his child and heir at law. These rules are very convincingly stated by *Associate Justice*

BANK *v.* MURRAY.

*Walker* in the recent case of *Dunn v. Hines, supra,* a case very similar to the one before us, and this and others of like import are in support of his Honor's ruling that, under the terms of the codicil, the estate of W. H. Murray, the only child and heir at law of the testator and the chief beneficiary of his will, became absolute on his marriage and the birth of living issue.

True, as defendant contends, it has been held that the courts may supply words in a will when its terms are ambiguous and the context and the facts and circumstances relevant to its interpretation show that this was the testator's meaning and purpose, the case cited by appellant, *Blum v. Gillett*, 208 Ill., 473, being in illustration of the principle.

It is true also that it is now held with us that where by will an estate is limited over on the contingency of a dying without issue, the contingency will usually be given its natural meaning and affect the estate till the time of the death of the first taker. See *Buchanan v. Buchanan,* 99 N. C., 308, and many other cases. But neither position can be allowed to prevail in the present case, where the testator has in express terms willed that the half of the estate shall go over in case his son fails to marry and have issue, thus fixing the marriage and birth of issue as the time when the son's estate shall become absolute. To uphold the construction insisted on by appellants, it would be necessary to add the words "which issue shall survive him." Not only do these words not appear in the will, but there is nothing anywhere in it to indicate that the testator had any such desire or purpose. On the contrary, the will throughout shows an affectionate confidence in his son and his desire and intent that he should be the chief beneficiary of his bounty. The very clause in question begins with the statement: "That my son will naturally fall heir to everything outside of the annuities." And while he might naturally be willing to affect the half of the estate with a contingency in favor of his brother's children while his son was single, it is entirely unreasonable to suppose, in the face of this will, that when his son married and had the responsibility of a wife and children, that it was the testator's intent to hamper half of his estate with a condition of this character till his death. It is not so expressed in the will, and there is nothing in the record to justify the Court in adding to the codicil the words required to effect such a purpose.

We regard the case of *Dunn v. Hines* as decisive of the present appeal, and the judgment of his Honor below must be affirmed.

Affirmed.