WALTER E. WALKER v. H. W. TROLLINGER.

(Filed 15 December, 1926.)

**1. Wills—Interpretation—Intent.**

In construing a will, the intent of the testator, not in conflict with law, will control and be given effect in connection with the parts relating to the same subject-matter, and in proper instances, with reference to other conditions existing at the time, and which would reasonably have influenced him in making the disposition of his property.

**2. Same—Estates—Remainders—Conditions—Statutes.**

An estate to the testator's wife for life, expressly providing that she is to have one-half of the products of the land while she lives, without power of disposition of the estate, but to take care thereof with the timber thereon, and at her death to his nephew, upon condition that he remain on the land, take care thereof with the timber and have a certain portion of the products thereof, without power to sell the lands in a certain time, also devising certain domestic articles and animals to her absolutely, together with evidence that the nephew remained with the testator and wife, etc. *Held:* the wife and the nephew were the primary consideration of the testator and the first objects of his bounty, and after the death of the wife, and the performance by him of the conditions set forth in the will, he took a fee-simple title to the lands in preference to the ulterior takers named in the will, to wit, the testator's brother and his children. C. S., 1734.

**3. Estates—Contingent Remainders—Vested Estates—Wills.**

Where it appears from a proper interpretation of a will that the testator's nephew is the primary object of his bounty to the ulterior takers in remainder, and it is expressed in the will that those in remainder take upon condition that the nephew should die without leaving child or children, the birth of a lawful child to the testator fulfills the condition imposed, and without further restrictive expressions the nephew then takes the fee-simple title.

**4. Wills—Interpretation—Vesting Estates in Prior Beneficiary—Constitutional Law—Statutes.**

Where, by a correct interpretation of the will, it will reasonably be allowed, the law will favor the early vesting of estates against the interests of a contingent remainderman. Const., Art. I, secs. 30, 31; C. S., 4162.

APPEAL by plaintiff from *Devin, J.*, at Chambers, 28 September, 1926, of ALAMANCE. Affirmed.

*L. D. Meador for plaintiff.*

*Dameron, Rhodes & Thomas and Coulter, Cooper & Carr, for defendant.*

CLARKSON, J. This is a civil action brought by plaintiff against defendant for damages for breach of a covenant of seizin in a deed from defendant to plaintiff, made 5 November, 1923, duly recorded in Alamance County, N. C. *Newbern v. Hinton,* 190 N. C., 108. All the facts necessary for the determination of the case, and a copy of the will, was set forth in the complaint. The defendant demurred to the complaint, which was sustained by the court below.

The land which defendant conveyed with covenant of seizin to plaintiff, defendant contends was willed to him in fee simple by Jacob L. Trollinger, by will dated 17 May, 1879, duly probated 16 October, 1879. H. Walter L. Trollinger, named in the will, is the defendant, H. W. Trollinger.

For the solution of the controversy we must consider the material parts of the will: "To my beloved wife, Rebecca A., I give and bequeath all of my real estate with the following conditions: She is to have one-half of all the products of the land as long as she lives, or during her widowhood, but she shall have no power to give, bargain, lease or sell any portion of said estate, and she shall do what she . . . to take care of timber and real estate. It is my will at the death or marriage of my wife to give to H. Walter L. Trollinger all of my real estate, also all my personal property of every description, the condition of that gift is that my nephew, H. Walter L. Trollinger, remain on the lands and cultivate and take the care he can of timber lands, and in consideration therefor, he is to have one-half of all that is produced on said lands. He shall not bargain, lease or sell any portion of said land and he shall have no power in any case to sell or bargain to sell any portion of this real estate before the year 1895. It is my desire that all the personal property which belongs to my dear wife shall be given to her absolutely, which consists of the following: One white horse, one sewing machine, one set of cane-bottom chairs with a rocker; one cow, one cooking stove, one press, one bureau, one falling-leaf table, one washstand, one candlestand, one set of bedsteads, one large mirror, two beds and bedding. And my will is, that in case of the death of H. Walter L. Trollinger, without his having a child or children, then and in that case, I give all my real estate and personal property of every description to my brother, Moses B. Trollinger, and his children."

The testator died the same year the will was executed. The widow was dead at the time the land was conveyed to plaintiff. Under the will there were certain things to be done and not to be done by the defendant, Trollinger. It is admitted that all conditions or requirements were fulfilled by him. The confession is not applicable to defendant: "I have left undone those things which I ought to have done, and done those things which I ought not to have done."

The question involved: Did defendant have a fee-simple title to the land under the will? We think he did, and the court below was correct in sustaining the demurrer.

In *Edmundson v. Leigh*, 189 N. C., p. 200, it was said: "It is settled law in this State that the intent of the testator, as expressed by the terms and language of the entire will, must be given effect unless in violation of law. 'Every tub stands upon its own bottom,' except as to the meaning of words and phrases of a settled legal purport. A will must be construed 'taking it by its four corners.' *Patterson v. McCormick*, 181 N. C., 313; *Smith v. Creech*, 186 N. C., 190; *Wells v. Williams*, 187 N. C., 138"; *McCullen v. Daughtry*, 190 N. C., p. 215; *Westfeldt v. Reynolds*, 191 N. C., p. 802.

The cardinal principle or polar star is to gather the intent from the entire will. To determine this, we consider the setting—the surrounding circumstances of the testator when the will was executed; if possible reconcile and harmonize the different parts; to consider it as a whole and in all its parts. The testator had no children. The defendant was his nephew and living with him. His wife and the defendant were the primary objects of testator's bounty. He speaks of her as his beloved wife—my dear wife. The real estate is given on conditions. No doubt his wife had no one to care for her and he was making provision for her when he should "cross over the river and rest under the shade of the tree." The defendant was to remain on the land and cultivate it and take the best care he could of the timber lands. His wife was to have one-half the products of the lands and his nephew the other half. His wife had no power to give, bargain, lease or sell any portion of the lands. All the personal property which belonged to her is specifically mentioned and is given her absolutely—no doubt everything to remain intact—and his nephew to remain on and cultivate the land. At the death or marriage of his wife, all the real estate and personal property is given to defendant. He shall not bargain, lease or sell any portion of the land and no power in any case to sell or bargain to sell any portion of the *real estate before the year 1895. "And my will is that in case of the death of H. Walter L. Trollinger, without his having a child or children, then and in that case,"* the real estate and personal property he gives to his brother, Moses B. Trollinger, and his children.

At the time defendant conveyed the land to plaintiff, he was 65 years old and had had eight children born alive to himself and his wife, five of whom are now living, the oldest 28 years of age and the youngest 16 years of age.

Under our form of government the law favors the early vesting of estates to the end that property may be kept in the channels of trade and commerce. Hereditary emoluments and perpetuities are contrary to our Constitution, Art. I, secs. 30 and 31. This policy of the law is clearly indicated by C. S., 4162: "When real estate shall be devised to any person, the same shall be held and construed to be a devise in fee simple, unless such devise shall, in plain and express words, show, or it shall be plainly intended by the will or some part thereof, that the testator intended to convey an estate of less dignity."

Primogeniture, which existed under the Mosaic and English law, never took root in the states of the Union. Estates tail were soon abolished. "Fee Tail. Of these estates it is only necessary to say that they existed in this State in Colonial days; that by section 43 of the Constitution of 1776 it was provided that, 'The future Legislature of this State shall regulate entails in such a manner as to prevent perpetuities'; that in 1784 the Legislature passed an act by which all estates tail then in existence were converted into fee-simple estates, and it was enacted that all such estates as should be thereafter created should be deemed to be in fee simple." Mordecai's Law Lectures, vol. 1, p. 498. C. S., 1734.

Estates are now held in the British Isles granted by the Norman Conqueror, William (1085), and by the Bruce, after the Battle of Bannockburn (1314), estates tail general or special, estates tail male and estates tail female. The heavy tax brought about by the World War has forced many of the estates entailed to be divided up and sold. Thus the land is gradually getting into possession of the masses. In the States of the Union, this heirarchy under our conception of freedom could not exist. To get rid of the feudal tenure and system and consequent vassalage were some of the reasons why our forefathers left the mother country.

What is the meaning *"without his having a child or children, then and in that case"?* We think it clearly means what it says—that at the death of H. Walter L. Trollinger, if he, during his lifetime had no child or children, the estate then and in that case would go to his brother and his children. Having a child in his lifetime, the happening of the contingency, the estate became vested and defendant acquired a fee simple estate in the land. The estate vested on the happening of the contingency of having a child.

Webster's dictionary: "Having: Act or state of possessing; thing possessed."

In *Dunn v. Hines,* 164 N. C., p. 113, the language in the will to be construed, was: "And at the death or marriage of my said wife, then I give said tract of land to my said daughter, Carrie F. Isler, during her natural life; and if she shall marry and have children to arrive at the age of 21 years, then my said daughter and her children then living, together with the children of any deceased child, shall have tract of land absolutely in fee simple forever. And if my said daughter should die without marriage and children of the age of 21 years or bodily heirs of such children, then I give said tract of land to my son," etc. The daughter married and had a child who attained the full age of 21 years. The Court said at p. 117: "In the first limitation he declared that if his daughter, Carrie, should marry and have children, who attained to the age of 21 years, *then* she and her living children and the children of any deceased child should have a fee simple in the land absolutely. What does this mean? What else can it mean than that the estate is to vest absolutely in fee, in the lifetime of his daughter, when she married and had such children, for he says, in so many words, it shall 'then' vest." And at p. 121: "These facts show conclusively that the testator intended that the estate should absolutely vest in his daughter and her children as soon as there was a child of full age."

We think that *Bell v. Keesler,* 175 N. C., p. 525, citing the *Dunn case, supra,* is similar to the facts in the present action. The language construed: "In event of my dying and no child or children by my beloved wife, Laura Amanda Glover, live to become of age, or marriage, or die without heirs, I then give, devise," etc. Laura Amanda Glover died and left one child, Maria Anna Glover, who, when unmarried about the age of 50, executed the conveyance in controversy. This Court held that she had an unqualified estate in fee simple and on the death of her mother she was to have all the property in absolute ownership, either on her becoming of age or on her death having heirs in the sense of children or offspring. The Court says, at p. 528: "In ascertaining whether there is an intent in the face of the will or deed to fix an earlier period when the estate shall become absolute, we have held in numerous cases that the instruments should be construed in reference to the recognized principles that the law favors the early vesting of estates, and that the first taker is ordinarily to be regarded as the primary object of the testator's bounty, and more especially so when such taker is a child or lineal descendant. *Bank v. Murray,* 175 N. C., 62; *Dunn v. Hines,* 164 N. C., 113; *Robertson v. Robertson,* 190 N. C., p. 558.

In *Jeffreys v. Conner,* 54 English Reports, p. 393 (28 Beav. 328), it is said: "The Master of the Rolls (Sir John Romilly) : On the other point, the only way of cutting the knot is to hold that dying 'without

having any child or children,' means 'without having had any child,' and that dying 'without any child or children,' means 'dying without any child or children living at the death.' It is a very capricious disposition on the part of the testator, but if he has thought fit to do so, I should be making a will for him if I were to alter it; besides, there is this difficulty—must I alter the first clause to make it agree with the second, or the second to make it agree with the first? The only way is to give effect to each clause as if it were by itself. He has said: 'If my son, Charles, die without having any child or children,' that cannot take place, because he has had a child, and therefore that gift over does not take effect."

In Weakley ex dem., *Knight v. Rugg,* 101 English Reports, 998 (7 T. R., 322), it is said: "A., having three daughters, B., C. and D., by will gave a small legacy to B. and C., and then gave a leasehold estate to D. 'But if she died without having child or children' then 'to B., and after her to her child or children'; D. had a child who died in her lifetime: *Held,* that D. took the absolute interest in the term and consequently that she might dispose of it by will."

For the reasons given, the judgment of the court below is

Affirmed.