WACHOVIA BANK & TRUST COMPANY, as Trustee Under the Will of FANNIE E. CORRIHER, v. MRS. ELLA MILLER, MRS. HESTER A. SUTTLEMYRE, MRS. MILDRED WASHBURN, MRS. LAURA SHUFORD, EVERETTE CORRIHER, MRS. EUGENIA EDWARDS McKENZIE, B. O. EDWARDS as Administrator of the Estate of JOHN REID EDWARDS, and B. O. EDWARDS, Individually.

(Filed 7 April, 1943.)

1. **Wills § 32—**

    The intent of the testator, as expressed in the will, "taking it by its corners," is the "Polar star" guiding the Court in arriving at the proper construction of the language used. In ascertaining such intent two presumptions generally prevail: (1) against intestacy; and (2) in favor of the first taker.

2. **Wills § 31—**

    The intention of the testator need not be declared in express terms in the will, but it is sufficient if the intention can be clearly inferred from particular provisions of the will, and from its general scope and import.

3. **Wills §§ 33c, 33d: Estates § 9a—**

    Cross remainders are implied in a will where there is a gift for life or in tail to two or more persons as tenants in common, followed by a gift over of all property at once. Cross executory limitations apply to personal property like cross remainders to realty and both prevent a chasm or hiatus in the limitation.

4. **Same—**

    Where real and personal property is left by will in trust for two grandchildren until they reach the age of 35 years, when the principal is to be

given them, with the provision that should they not live and not have bodily heirs the property shall go to other named persons, upon the death of one of the grandchildren, without issue and before reaching 35 years of age, his part of the trust goes to the surviving grandchild under the terms of the will. The limitation over does not become operative as to his one-half of the trust, for it was the intention of the testatrix that the trust should go as a whole to the class as indicated, unless both should die without bodily heirs.

APPEAL by defendants, Mrs. Eugenia Edwards McKenzie and B. O. Edwards, individually, and B. O. Edwards as administrator of the estate of John Reid Edwards, from Pless, J., at October Term, 1942, of ROWAN. Error.

Petition by plaintiff trustee for advice and instruction.

There was born to Mrs. Fannie E. Corriher, late of Rowan County, two children, a daughter, Zelia Corriher, who married defendant B. O. Edwards, and a son, Everette Corriher. Zelia Corriher Edwards predeceased Mrs. Corriher, leaving surviving two children, John Reid Edwards and Eugenia Edwards.

Mrs. Corriher died leaving a last will and testament in which she made certain individual bequests and devises, which included the home place to her son and her Asheville real property to her grandchildren. The remaining pertinent part of the will is as follows:

"The balance of my estate stocks bonds or real estate where ever located I place in the hands of the Wachovia Bank & Trust Co. or the Commerce Bank Trust Co. of Asheville. Of this fund I bequeath to my two grand children John Reid & Eugenia 60 per cent of the above stocks and to Everette Corriher (40) forty per cent. Eugenia Edwards to receive the interest or div. on her part of stock when she arrives at the age of 25 if she proves herself capable of handling it. John Reid's portion of the estate to be kept by the above Trust Co. and the interest to be paid to him by The Trust Co. when he is 25 years old. And the principal to be paid to Eugenia & John Reid when they are 35 years old if they prove themselves capable of handling it.

"To my son Everette when my executor shall be satisfied that he has given up the use of intoxicating drinks after two—2—years, I will that the interest be turned over to him, and the principal be held by the Trust Co. as long as he lives and then to be given to John Reid and Eugenia Edwards, unless Everett marries and has bodily heirs. Then the estate is to be held by the Trust Co. for them, unless he has shown that he has given up the use of strong drink after 5 years.

"I will that should Eugenia & John Read Edwards not live and not have bodily heirs that their part of the estate shall be divided between Everette and my sisters who are living at that time. Everett to receive

half and to be held by the Trust Co. and my sisters the other half and their part to be divided equally among themselves."

A codicil named plaintiff Trust Company as trustee.

John Reid Edwards died intestate on or about 8 November, 1941, without surviving wife or issue and being less than 35 years of age at the time of his death. Thereupon a controversy arose as to whether the limitation over contained in the will became effective at his death and if not as to who became seized and possessed of his interest in the trust estate. The plaintiff trustee instituted this action to obtain instructions as to the disposition it should make of said estate.

When the cause came on to be heard the court below concluded that the limitation over became operative as to one-half of the trust estate devised for the use of the grandchildren upon the death of John Reid Edwards, and that, therefore, said one-half should be divided into equal shares and distributed 50% to Everette Corriher and 50% to the surviving sisters of the testatrix, to wit: Ella Miller, Hester A. Suttlemyre, Laura Shuford and Mildred Washburn. Defendant Eugenia Edwards McKenzie, B. O. Edwards, individually and as administrator of the estate of John Reid Edwards, excepted and appealed.

*Linn & Linn for Wachovia Bank & Trust Co., as Trustee under the Will of Fannie E. Corriher, plaintiff, appellee.*

*Walter H. Woodson, Jr., and Walter H. Woodson for defendants, Mrs. Ella Miller, Mrs. Hester A. Suttlemyre, Mrs. Mildred Washburn and Mrs. Laura Shuford, appellees.*

*Williams & Cocke for defendants, appellants.*

BARNHILL, J. While Everette Corriher did not appeal, he, in his answer, takes the position that at the death of John Reid Edwards his interest in the estate vested in the son and in the granddaughter and that if he, Everette, took no part thereof then it vested in the granddaughter Eugenia.

The granddaughter, Eugenia Edwards McKenzie, and B. O. Edwards, individually and as administrator, assert that John Reid's interest in the trust estate vested in Eugenia, and if not, then in Eugenia and the son Everette. The four surviving sisters, collateral kin, contend that as to one-half of the devise to the grandchildren the executory bequest or ulterior limitation over became effective as to one-half of the gift in trust to the grandchildren upon the death of John Reid and that, therefore, they jointly take one-half and Everette takes the remainder.

These conflicting contentions raise this question: Was it the intent of the testatrix that the executory limitation over of the gift to the grandchildren John Reid and Eugenia should take effect and become operative

only in the event both died without bodily heirs, so that the gift would go over as a whole?

The intent of the testatrix, as expressed in the will, "taking it by its four corners," is the "Polar star" guiding the Court in arriving at the proper construction of the language used in the will. *Patterson v. McCormick,* 181 N. C., 311, 107 S. E., 12; *Smith v. Creech,* 186 N. C., 187, 119 S. E., 3; *Wells v. Williams,* 187 N. C., 134, 121 S. E., 17; *Edmondson v. Leigh,* 189 N. C., 196, 126 S. E., 497; *McCullen v. Daughtry,* 190 N. C., 215, 129 S. E., 611; *Westfeldt v. Reynolds,* 191 N. C., 802, 133 S. E., 168; *Walker v. Trollinger,* 192 N. C., 744, 135 S. E., 871.

The intention of the testatrix need not be declared in express terms in the will, but it is sufficient if the intention can be clearly inferred from particular provisions of the will, and from its general scope and import. The courts will seize upon the slightest indications of that intention which can be found in the will to determine the real objects and subjects of the testatrix's bounty. 28 R. C. L., 218. And it is generally held that, in seeking to discover this intention, two presumptions prevail— (1) against intestacy, *Case v. Biberstein,* 207 N. C., 514, 177 S. E., 802, and cases cited; 28 R. C. L., 227; 69 C. J., 91, sec. 1147; and (2) in favor of the first taker, *Dunn v. Hines,* 164 N. C., 113; *Citizens Bank v. Murray,* 175 N. C., 62, 94 S. E., 665; *Smith v. Creech, supra;* 69 C. J., 103.

The will under consideration was, in some respects, ineptly drawn and leaves room for doubt as to the real intention of the testatrix. The natural result is the controversy which has now arisen.

While it is lacking in exactness of expression and attention to details that might be expected in a paper writing disposing of an estate of the size here involved, it does contain *indicia* which we think point with reasonable certainty to the intent of the testatrix, and to the ultimate purpose she was seeking to accomplish.

It discloses an understanding of the difference between a gift that is several or in common and one that is joint. After making certain specific bequests she gave to her grandchildren the furniture which belonged to their mother with directions for division. She also devised to them her Asheville real estate "to be divided." She likewise bequeathed to them a china dinner set—a gift that could not be divided without destroying the value of the gift itself. Then when she came to the residue of her estate she recognized her two lines of lineal descendants and divided it accordingly—into two shares, 60% to one line, the grandchildren, and 40% to the other line, her son.

The gift to the grandchildren is "to my grand children John Reid & Eugenia 60 per cent . . . The principal to be paid to Eugenia & John Reid when they are 35 years old . . . Should Eugenia & John Reid not

live and not have bodily heirs then their part of the estate shall be divided between Everette and my sisters."

Although she had made provision for the separation of income during the existence of the trust and had made devises to be divided there is no provision for a division or for the separation of interest in the principal estate given the grandchildren. It is to *them* to be received by *them* when *they* become 35 years of age and to go over in the event *they* shall die without bodily heirs. In that event *their* part is to be divided between her son and collateral heirs.

It is apparent then that the testatrix intended the gift in trust to the grandchildren as representatives of one line of descent, to go over at one time as a whole in the event both should die, neither having bodily heirs. The limitation over cannot take effect unless both die without bodily heirs.

This is a logical conclusion reasonably justified by the language used. Naturally her primary concern was to provide for her lineal descendants. This she did. It is equally natural that she should make sure that the gift to neither line should fail so long as there remained anyone in that line capable of taking.

This conclusion is in accord with the decisions of this Court. *Coffield v. Roberts,* 35 N. C., 277; *Picot v. Armistead,* 37 N. C., 226; *Kirkman v. Smith,* 174 N. C., 603, 94 S. E., 423; *Leggett v. Simpson,* 176 N. C., 3, 96 S. E., 638; *Pratt v. Mills,* 186 N. C., 396, 119 S. E., 766; *Lamm v. Mayo,* 217 N. C., 261, 7 S. E. (2d), 501. See also *Henry v. Henderson,* 60 So., 33; *Kramer v. Sangamon Loan & Trust Co.,* 293 Ill., 553, 127 N. E., 877.

In the *Leggett case, supra,* which is almost identical, the devise was to Elizabeth Bateman and Charlotte Baxter, nieces, for life, and then "to the lawful children of my nieces (naming them) all the lands I have loaned in a former item to my nieces (naming them) to have and to hold to them in fee simple forever, at the death of my aforesaid nieces." The will further provided that "in the event that my said nieces (naming them) should die without leaving any lawful children then it is my wish and desire that the land devised in a former item to them shall go to the children of my sister Martha Perry and Sally Leggett, and to have and to hold to them in fee simple forever." Elizabeth Bateman died without children and the ulterior devisees claimed her interest. The Court said: "Elizabeth Bateman having died without children the land went to Charlotte Baxter and after her death to her children and they and their grantees are the sole owners thereof. The devise over to the children of his sisters, Martha Perry and Sally Leggett, was contingent on the death of his nieces Elizabeth Bateman and Charlotte Baxter 'without leaving any lawful children living,' which contingency did not happen and the plaintiffs therefore take nothing."

In the *Lamm case, supra,* the devise was to the testator's two grandchildren (naming them) their lifetime and after their death then to their lawful children, if any, and if none, then to be equally divided between all her children. One grandchild died without children or lineal descendants and the children of the testator made claim to her share. The Court held that the limitation over could not become effective before the death of both and that the purchasers from the surviving claimant who had children acquired a good title.

In the *Kirkman case, supra,* the devise of a remainder was to "Guy Kirkman and Marvin Kirkman and their heirs and if they should die without bodily heirs then the land to go over to the Flow heirs." Marvin Kirkman died intestate without issue. Guy Kirkman had two children. The Court held that the contingency upon which the executory devise, by way of a shifting use, was to become effective had not happened.

On the contrary, the interpretation insisted upon by appellees would produce results wholly inconsistent with her primary intent to provide for those who had first claim on her bounty—her lineal descendants. If that view is adopted her granddaughter would take no part of her brother's share in the trust estate. Instead, it would go in part to collateral heirs.

Likewise, it would, in all probability, create two groups of ultimate takers. The gift over is "to my sisters who are living at that time." Four sisters of the testatrix survived John Reid. Should Eugenia die without bodily heir there may then be only one or perhaps no sister to take under the limitation over. Hence, different persons would take or some of the same devisees would take different portions under identically the same executory devise.

It cannot be assumed from any expression in the will that the testatrix intended either result. That she did not so intend is evidenced by her gift to Everette which goes to the grandchildren in the event he does not marry and have bodily heirs.

What then is to become of John Reid's share in the trust estate? As to it, since he died without bodily heir, did testatrix die intestate?

To adopt the intestacy theory would defeat the trust. The trustee is to hold the trust property until both arrive at the age of 35. That event has not yet occurred. It would likewise annul the limitation over for, under the law of intestacy, the estate would descend to the father of John Reid. Then, too, it would deprive the lineal descendants of any part thereof and vest it instead in a stranger in blood. Such conclusion is violative of the whole tenor of the will. An assumption of interstitial intestacy is equally untenable.

On the other hand, the will does permit the conclusion that testatrix intended cross remainders or reciprocal rights of succession as between the grandchildren.

Cross remainders are implied in a will where there is a gift for life or in tail to two or more persons as tenants in common followed by a gift over of all the property at once. 2 Simes, Law of Future Estates, 258, sec. 435; 23 R. C. L., 555, sec. 102. 1 Jarman on Wills, 660.

"Under a devise to several persons in tail, being tenants in common, with a limitation over for want or in default of such issue, cross-remainders are to be implied among the devisees in tail." 1 Jarman on Wills, 668.

"In the case of a devise to several persons in tail, assuming the intention to be clear that the estate is not to go over to the remainderman until all the devisees shall have died without issue, the effect of not implying cross remainders among the tenants in tail would be to produce a chasm in the limitations, inasmuch as some of the estates tail might be spent, while the ulterior devise could not take effect until the failure of all." 1 Jarman on Wills, 669.

"In the case of a devise to A. and B. and a gift over after the death of both of them to C., cross-remainders are implied, for otherwise, upon the death of A. before B., the interest which A. had would be terminated by his death and would remain undisposed of by the will until B.'s death, since C., the remainderman, cannot take anything until after the death of both A. and B. There is a presumption that the testator intended to dispose of his whole estate by his will, and a construction which will result in even partial intestacy will not be adopted if a different construction is permissible. Therefore the law implies cross-remainders in the case supposed, and the survivor of the two succeeds to the deceased cotenant's interest until the expiration of the term. In *Doe v. Webb,* 1 Taunt, 234, whether or not there were cross-remainders was held to be a question of the testator's intention, whether or not he intended the whole estate to go over together to the ultimate taker as a whole." *Whittaker v. Porter,* 151 N. E., 905.

The rule is quoted in *Lombard v. Witbeck,* 173 Ill., 396, 51 N. E., 61, as follows:

"You must ascertain whether the testator intended the whole estate to go over together. If you once found that to be intended, you were not to let a fraction of it descend to the heir at law in the meantime. You were to assume that what was to go over together, being the entire estate, was to remain subject to the prior limitations until the period when it was to go over arrived."

The rule as to real estate applies to personal property.

"Cross executory limitations in the case of personal estate, like cross remainders of real estate, are only implied to fill up a hiatus in the limitations, which seems from the context to have been unintentional . . . Such gap occurs . . . where, there being such a gift over, the preceding

limitations do not provide for every event except that contemplated by the gift over, but leave some gap which would occasion an intestacy as to part of the estate." 1 Jarman on Wills, 672.

"Perhaps the requisite for the implication of cross remainders most often emphasized in judicial opinions on the matter is that testator has expressed an intention that the property shall all go over at one time." 2 Simes, Law of Future Estates, 262.

That the testatrix intended the gift to the grandchildren as a group representing one line of descent, the whole to go to the survivor in the event one should die without bodily heir, seems to be reasonably certain. This conclusion is in harmony with the whole tenor of the will. It dovetails with the general intent to provide for her two lines of descent and to make provision for those who had first claim on her bounty and is consistent with the rule that favors the first taker. It is likewise consonant with the decisions in this and other jurisdictions. *Kirkman v. Smith, supra; Leggett v. Simpson, supra; Pratt v. Mills, supra; Lamm v. Mayo, supra; Hadcox v. Cody,* 213 N. Y., 570, 108 N. E., 84; *Kramer v. Sangamon Loan & Trust Co., supra; Henry v. Henderson, supra; Addicks v. Addicks,* 266 Ill., 349, 107 N. E., 580.

We are advertent to the decisions in *Coffield v. Roberts, supra,* and in *Picot v. Armistead, supra,* where it was held that the doctrine of cross remainders could not be applied. If those cases are not factually distinguishable they are not, in this respect, in harmony with later decisions of this Court.

There was error in the judgment below. A decree must be entered adjudging that the defendant Eugenia Edwards McKenzie is the owner of the trust estate bequeathed to her and her brother John Reid Edwards subject to the contingent limitation over contained in the will.

Error.