HUNGER-
FORD             I am therefore of opinion, the verdict ought to stand,
v.
ANDERSON.        and that the rule for a new trial be discharged.

In this opinion the other judges severally concurred.

New trial not to be granted.

---

AMOS HUNGERFORD, JOSIAH HUNGERFORD, JEHIEL HUN-
GERFORD, STEPHEN HUNGERFORD, NATHANIEL HUN-
GERFORD AND ELIHU HUNGERFORD *against* ROBERT
ANDERSON.

*A.* devised     CASE stated.
lands to his
four sons, *B.,*      This was an action of ejectment.    The defendant
*C., D.* and     pleaded the general issue; after which the following
*E.,* and to
their male       case was stated, and agreed to by the parties:
heirs of their
own bodies           *Green Hungerford* died in 1735, seised in fee of the
begotten, for    demanded premises, having devised the same by his last
ever; and in
case either or   will as follows: " I give to my four sons, viz. *Green,*
any of them
should die be-   *Lemuel, Stephen* and *Nathaniel,* all my right in all the
fore the age
of 21, his or    undivided lands in *East Haddam,* to be equally divided
their lands to   between them; all which lands, and right of lands, I give
be equally di-
vided between    to my aforesaid four sons, and to their male heirs of
the surviving
brethren, or     their own bodies begotten, for ever.    And it is my will
their male       that if either of my sons shall die before he or they
heirs. *B.* died
during infancy, and before distribution of the lands, without issue.  *C.* and *D.* died
successively afterwards leaving issue male; and lastly *E.* died leaving issue female only.
Held that this devise created no cross remainders between the devisees, and that the
entailment being spent on the death of *E.* without issue male, the estate reverted to
the heirs general of the devisor, except the share of *B.* which, on his death, went to
the surviving brethren, and on their deaths to their respective heirs general.
    In order to raise cross remainders by implication in a will, there must appear an in-
tention that no other person shall inherit any part of the estate, or take it by way of
remainder, as long as any of the immediate devisees, or any of their issue, are living.
    In a devise of real estate the words *I give such estate to A., or A. shall have such
estate, or such estate shall be equally divided between A. and B.,* are sufficient, without
other words, to vest a fee-simple in the devisee or devisees.

shall come of age, his or their lands shall be equally di-
vided between the surviving brothers, or their male
heirs." *Stephen* died in 1737, an infant, without issue.
In 1743 the premises were distributed to *Green*, who
thereupon entered and possessed the same until his
death. In 1786 *Lemuel* died, leaving *Josiah Hunger-
ford*, one of the plaintiffs, his only son. In 1807 *Na-
thaniel* died, leaving the other plaintiffs, his sons. In
1808 *Green* died, having never had issue male, leaving
*Anna*, wife of the defendant, with eight other daughters.
The plaintiffs entered, and were disseised by the de-
fendant. The question for the opinion of the nine
judges was, whether the plaintiffs were entitled to re-
cover.

*Daggett* and *Peters*, for the plaintiffs, after remarking
that the estate devised was an estate in tail male general,
and that by no possibility could a female take until such
estate was spent, contended, that cross remainders were
created by the will, and that upon the death of *Green*, the
estate went to the heirs male of *Lemuel* and *Nathaniel.*
The old doctrine that cross remainders shall never be
raised by implication between more than two, is entirely
exploded. They cited *Dyer*, 303. b. pl. 49. 4 *Leon.* 14.
pl. 51. *T. Raym.* 454. *Wright* v. *Holford*, *Cowp.* 31. *Phi-
pard* v. *Mansfield*, *Cowp.* 797. *Atherton* v. *Pye*, 4 *Term
Rep.* 710. *Co. Litt.* 195. b. *n.* 1. by *Butler.*

*Hosmer*, for the defendant, contended,

1. That the devise created no remainder of any kind;
because it expressed no *life estate* in the sons of the tes-
tator. The whole inheritance passed to them. The
words "heirs male" are not words of purchase but of
limitation. 2 *Bl. Com.* 164. *Shelley's Case*, 1 *Co.* 104.
*Bishop* v. *Selleck*, 1 *Day*, 299. The word "heirs," by
long usage, has obtained a technical import as *nomen
collectivum*, and conclusively so, unless other words show

June, 1810.

HUNGER-
FORD
v.
ANDERSON.

June, 1810. a different intent. *Pow. on Dev.* 357, 358. 363. *Doug.* 327.
per *Buller*, J. *Per se* it is a word of limitation, designa-

HUNGER-
FORD
v.
ANDERSON.

ting the quantity of interest. But at any rate, a devise
to *A.* and his heirs mail, is always an *estate tail.*

2. That the testator did not devise an estate tail joint-
ly inheritable by the male descendants of all the sons;
but the sons were tenants in common of the premises,
and on the death of either, his share descended to his
male heirs, and on failure of such, reverted to the donor.
That the first donees were tenants in common is evident
from two considerations. First, our law allows of no
joint tenancy, as it exists in *England. Phelps* v. *Jepson,*
1 *Root,* 48. And even in *England* it is considered as
odious by the courts of chancery. *Barker* v. *Giles,* 2 *P.
Wms.* 281. Secondly, the words " equally to be divided,"
in a will, create a tenancy in common. 2 *Bl. Com.* 193.
2 *P. Wms.* 282. 1 *Ves.* 167. If the first donees were
tenants in common, it follows that the inheritance must
be *several* from each to his heirs male; and for want
thereof, there must be a reversion.

REEVE, J. This is a case stated for the purpose of
taking the opinion of this court thereon.

*Green Hungerford* the elder, by his will, gave the de-
manded premises to his four sons, *Green, Lemuel, Ste-
phen* and *Nathaniel,* to them and the male heirs of their
bodies, creating in them an estate in *tail male.* And if
any of his said sons should die before they came of age,
his part was given to the survivors, or their male heirs.
*Stephen* did die before he came of age, and before the
distribution of the estate of *Green Hungerford* the elder,
by which means his share went to the surviving brothers.
The lands in question were distributed to *Green Hunger-
ford* the younger, who afterwards died and left no sons,
but left several daughters, one of whom is married to
the defendant, who is in possession of the same ; and
the plaintiffs, being the male heirs of the bodies of *Le-*

*muel* and *Nathaniel*, their fathers having deceased, have
brought the present action of ejectment, on which this
case is predicated, claiming that they are entitled to the
lands under the will of *Green Hungerford*.  The object
of the parties is to learn whether the plaintiffs took any
part of the estate by virtue of the will of their grandfa-
ther.

I am of opinion that they took nothing on the death
of *Green* the younger without male issue.   The entail-
ment to him was spent, and, of course, reverted to the
heirs of *Green Hungerford* the elder; and in its state of
reversion, became in those heirs a fee-simple, as it was
in *Green Hungerford;* so that all the heirs, male and fe-
male, of *Green Hungerford*, are entitled to equal shares
of the lands so entailed to *Green Hungerford* the
younger.

As to that part which was distributed to *Stephen*, on
his death it vested a fee-simple in the surviving brothers.
One third thereof was to be distributed to *Green* the
younger, and on his death, vested in his daughters; for
this estate was not to go to the surviving brothers and
the male heirs of their bodies, but to them or their male
heirs ; and, they all being alive, *Stephen's* part vested in
them a fee-simple, and had any of them been dead, the
estate would have vested a fee-simple in their male
heirs; so that this part of the estate of *Green* the young-
er, which came from *Stephen*, descended to the daugh-
ters of *Green* the younger.

It is true, there are no words of inheritance in the de-
vise over of *Stephen's* part; neither are there any words
which would furnish evidence of the intent of the
devisor to give a fee-simple according to *English* de-
cisions.   But I take it, that, according to a well esta-
tablished series of decisions, when real property is de-
vised in a will in *Connecticut*, the same absolute owner-
ship is given as if it had been a legacy of personal pro-
perty.   The principle, both in the *English* law and in

ours, is, that the intention of the devisor shall govern. The difference arises not from any difference of principle; but, in *Connecticut*, we consider the gift of real property, without other words, as furnishing evidence that the devisor meant to convey a fee-simple; which intention, in *England*, they do not consider as sufficiently manifested by such a devise. The plaintiffs in this case claim the premises exclusively, contending that the will of *Green Hungerford* the elder, gave to the devisees and their male issue cross remainders, so that the estate so devised cannot ever revert to the heirs general of said *Green* the elder, while any of the male issue of any of the devisees are living. It is a universal rule of law, that cross remainders can never be created but by express words in the will, or by necessary implication. There is no pretence that cross remainders are created in this will by express words. In order to constitute a cross remainder by necessary implication, there must appear in the will an intention that no person shall inherit any part of the estate, or take it by way of remainder, as long as any of the devisees, or any of their issue, to whom it is given, are alive. On this ground it has been determined in *Dyer*, 303. b. where an estate was given to divers persons, and the heirs of their bodies, and if they all die without issue of them, remainder to *A*. Now it is apparent that *A*. cannot take, unless they all die without issue; who, then, is to take the estate of one of them who should die without heirs of his body? By necessary implication it must be the other devisees. So a devise to two daughters and their heirs, and if they die without issue, then to *B*. That is, if both die without issue, *B*. takes the land; but not until that time. If one of them had died without issue, the other devisee must take it by necessary implication; for *B*. could not.

There are no words in this will that manifest the least intention, that if one of the devisees should die without male heirs of his body, his heirs at law should not take

his part, as long as there were any male heirs of the bodies of the other devisees. If this should appear, there would be more reason to say that there must be cross remainders; for, in this case, if the plaintiffs, the male heirs of the bodies of the other devisees, could not take, no person could. Upon examination of the authorities both where it has been decided that there were cross remainders, and where it has been decided that there were not, no one is to be found like this. No lawyer seems to have entertained an opinion that a cross remainder can arise by implication only, when on failure of the devisee's issue, the estate is limited over to another. The presumption of law is, when a man devises an estate to two or more, to be divided betwixt them, and to the heirs of their bodies, that is, their respective heirs, that if such heirs should fail, the estate should revert to the heirs of the devisor. Every case to be found, arises where an ultimate remainder was limited, after failure of the issue of the devisees, to some person; and the inquiry has ever been, can this person to whom the remainder was limited, take the estate of one of the devisees dying without issue? or must he wait until all the devisees are dead without issue? The intention manifested in the will determines this. If it is clear that he cannot take the estate as long as any devisee or his issue are living, then such devisee or issue takes the share of the deceased devisee, by necessary implication.

In this opinion, the other judges severally concurred.