JOHN W. NASH *v.* DANBURY NATIONAL BANK, EXECUTOR (ESTATE OF LUTHER R. NASH)

KARL S. NASH ET AL. *v.* DANBURY NATIONAL BANK, EXECUTOR (ESTATE OF LUTHER R. NASH)

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued March 6—decided April 22, 1952

*William H. Timbers,* with whom, on the brief, were *Raymond E. Hackett, Francis P. Schiaroli* and *Howard S. Tuthill,* for the appellants (plaintiffs Karl S. Nash et al.).

*John V. Donnelly,* for the appellant (plaintiff John W. Nash).

*Leonard McMahon,* for the appellee (defendant in both cases).

INGLIS, J. The plaintiffs appealed from the decree of the Probate Court allowing the final account of the defendant as executor of the will of Luther R. Nash. That account credits the defendant with payments, totaling about $66,500, proposed to be made to various charitable organizations pursuant to the directions of an "allocator," in accordance with the fifteenth section of the will. The Superior Court rendered judgment dismissing the appeals, and from that judgment the plaintiffs have appealed. Their principal claim is that the credits should have been disallowed because the section in question, if properly interpreted, is invalid for uncertainty. The plaintiff John W. Nash makes the added claim that, even if the section is not invalid, the credits should not be allowed because the allocator did not make his allocations either within the time or in the manner prescribed by the will. The case, therefore, turns upon the interpretation of the fifteenth section of the will.

The section in question is very long. We quote only such excerpts as have a direct bearing upon the questions to be decided: "In the event that my net estate . . . is adequate for the bequests made therefrom in the foregoing Sections Thirteenth and Fourteenth to the full amount stated therein, and a balance remains in

said net estate of more than twenty-five hundred dollars ($2500.), I give, devise and bequeath said balance, being the residue and remainder of my estate, to certain organizations and agencies to be designated by an Allocator hereinafter appointed, the distribution to be made by my Executor in accordance with such designations.

"The purpose to which said residue of my estate shall be devoted include the advancement of the interests of my native town of Ridgefield or other purposes through which such interests may be directly or indirectly affected. I assign such designation to said Allocator for the reason that bequests or gifts by others in effect or in prospect at the time of my death, for similar purposes make specific designations herein inexpedient.

"For the guidance of said Allocator, the following activities are named as indicative of the character of the purposes to which I desire the said residue of my estate to be devoted: [Then follows a list of five eleemosynary enterprises.]

"The foregoing list is not exclusive but is intended to indicate my primary purpose of promoting the interest and training of youth. It is my desire that said Allocator, hereinafter named, give careful consideration to the merits, needs and other resources of projects conforming to my purposes, whether or not herein listed. Should said Allocator find that funds from said residue can advantageously be devoted to some new project which requires larger amounts than are available hereunder, he may condition an allocation thereto under responsible cooperation with other agencies such as the Lions Club of Ridgefield, of which I am a member. While it is my preference that said residue be used for permanent facilities, said Allocator may, in his discretion, authorize the use of any part thereof to operating purposes to meet temporary or develop-

ment needs. Should the allocator find that all important needs of the character defined herein have been otherwise provided for, he may make, such wider distribution as he may find consistent with my general purposes or as may be indicated by my memorandum to him.

"I appoint Ralph E. Cramp as Allocator of the residue of my estate. It is my desire that he select qualified associates as advisers, preferably residents of Ridgefield, not less than two or more than five in number, to consider with him the disposition of said residue. The Allocator, however, shall have sole responsibility for all allocations after appropriate consideration of the recommendations of his associates. Said allocations may be made in designated sums or in percentages of the available residue or by any combination of these methods. . . .

"It is my purpose to leave a memorandum in which suggestions will be made to the Allocator as to his advisers and beneficiaries under said residue. This memorandum will be subject to revision from time to time to meet changing conditions relating to the disposition of said residue. While circumstances may arise which make exact adherence thereto inexpedient, it shall be regarded by the Allocator as substantially controlling with respect to his decisions."

The remaining four paragraphs of the section relate to the disposition of the residue in the event that the allocator fails to function.

The will was executed on September 23, 1944. On October 4, 1944, the testator transmitted to the executor the memorandum referred to in his will. In the transmitting letter he requested the executor to read the memorandum "to see that it is not in conflict with any of your functions as executor." Referring to a memorandum which he had sent in connection with an

earlier will and which related to the distribution of his personal effects by his nephew John, he stated: "You have no responsibility over this distribution such as you have in connection with the residue covered by the attached memorandum."

In the memorandum itself the testator explains that "the need for the Allocator provided for in this will" arises by reason of the testator's uncertainty both as to the amount of his residuary estate and as to the extent of the needs for the bequests provided for, since the projects may be financed from other sources before his death. The testator then states his reasons for being interested in the various charities specifically given as examples in his will and what he considers their needs. He goes on to list various other charitable organizations as possible alternative selections by the allocator, giving the reasons why those organizations commend themselves to him. Nowhere in the memorandum does he direct the allocator to designate any particular organization or purpose as a recipient of any of his estate. He suggests the names of five persons to act as the allocator's advisers. In the last paragraph of the memorandum he writes: "The extent and frequency of the allocator's consultations with his advisers are left to his discretion. It is my hope that their recommendations and advice may be of real help in the solution of his problems and my regret that it is necessary, in the absence of the recurrent revisions of my will, to place what may be complicated burdens upon him."

The parties are agreed that the fifteenth section of the will purports to create charitable trusts, even though the bequests are made to unnamed "organizations and agencies" and not to a trustee. See *Brinsmade* v. *Beach*, 98 Conn. 322, 334, 119 A. 233; *Dailey* v. *New Haven*, 60 Conn. 314, 324, 22 A. 945; 2 Restatement,

Trusts, § 397, comments c, f; 3 Scott, Trusts, § 388. Therefore, they are also agreed that § 6883 of the General Statutes, relating to charitable trusts, is relevant. That section provides in part: "No donor or testator shall be required to designate in [the] will, deed or other instrument the particular charitable purpose or class of purposes for which [the] property shall be used or [the] income applied. Any such gift, devise or bequest shall be valid and operative, provided the donor or testator shall give to the trustee or trustees thereof or to any other person or persons, the power to select, from time to time and in such manner as such donor or testator may direct, the charitable purpose or purposes to which [the] property or the income thereof shall be applied; and no such gift, devise or bequest, accompanied by such power of selection, shall be void by reason of uncertainty."

Except for the provisions of this statute, the law of this state is that a bequest to charity in general without naming the charitable organizations to be benefited or designating the charitable purposes to be accomplished within limits definite enough to control the conscience of a trustee is void for uncertainty. *Westport Bank & Trust Co.* v. *Fable,* 126 Conn. 665, 670, 13 A. 2d 862; *Bristol* v. *Bristol,* 53 Conn. 242, 257, 5 A. 687; *Fairfield* v. *Lawson,* 50 Conn. 501, 513; *Adye* v. *Smith,* 44 Conn. 60, 70. The fifteenth section of the will now before us does not make a bequest to any specific organization or for any specific or well-defined charitable purpose. It is, therefore, void unless it falls within the terms of the statute.

The effect of the statute is to make valid a bequest to charity generally, provided that by the terms of the bequest there is an absolute power vested in either a trustee or some other person to determine to what specific charity the property bequeathed shall be devoted.

*Westport Bank & Trust Co.* v. *Fable,* supra, 671; *Mitchell* v. *Reeves,* 123 Conn. 549, 552, 196 A. 785; *Cheshire Bank & Trust Co.* v. *Doolittle,* 113 Conn. 231, 235, 155 A. 82. The determinative question on this phase of the case, therefore, is whether the intent of the testator expressed in the fifteenth section is that the allocator shall have full power to designate the specific charities to receive the residue of the estate, as claimed by the defendant, or whether that intent is that the allocator shall be limited and controlled in his designation, as claimed by the plaintiffs.

The contention of the plaintiffs is that by the terms of the section it appears that the intent of the testator was to control the allocator by binding him to make his allocations in accordance with the directions contained in the extrinsic memorandum. It is axiomatic that the memorandum may not be incorporated by reference into the will so as to control the disposition of the testator's estate. *Seymour* v. *Sanford,* 86 Conn. 516, 521, 86 A. 7; *Bryan* v. *Bigelow,* 77 Conn. 604, 616, 60 A. 266. Accordingly, the plaintiffs say the section in question is left neither naming within its borders the charitable organizations which are to take nor leaving to any person the power to select the beneficiaries, as is required by the statute.

The only support for the interpretation of the will contended for by the plaintiffs is in the paragraph which refers to the memorandum. There the testator says: "While circumstances may arise which make exact adherence [to the memorandum] inexpedient, it shall be regarded by the Allocator as substantially controlling with respect to his decisions." If this were read by itself, it would be quite persuasive in the plaintiffs' favor. In the same paragraph, however, the testator says that the memorandum will contain "suggestions," not directions, to the allocator. Further-

more, it must be borne in mind that the memorandum itself contains no directions as to what charities the allocator shall designate. What it does contain is a recital of facts concerning certain named charities and a statement why the testator is interested in them. It is designed to be a statement of considerations which the allocator should have in mind. Obviously, the testator assumes that the allocator will be influenced in making his designations by the views of the testator himself about the possible beneficiaries. Apparently, therefore, when the testator said that the memorandum should be "substantially controlling," he meant that it should be taken as a definitive expression of his views concerning the merits and bases of appeal of the charities which he refers to in it. He recognized that conditions and his views might change between the time he executed his will and the date of his death. The device of leaving the disposition of the residue of his estate to an allocator was adopted by him, according to the memorandum, to avoid the necessity of frequent revisions of his will. It clearly was his purpose to meet changing conditions and possible changes in his views about various charities by changing his memorandum from time to time. Thereby he could furnish to the allocator as of the date when the will would operate his most recent thoughts on the subject, with the expectation that the allocator would take those thoughts into consideration. The memorandum was to be a substantially controlling expression of the testator's estimate of the eligibility of the various charities.

Whatever force there may be to the contention of the plaintiffs based on the words "substantially controlling" is dissipated when the fifteenth section is read as a whole, as of course it must be to arrive at a proper interpretation of it. In case of doubt, the provisions

of a will are to be construed so as to avoid even a partial intestacy if they can reasonably be so interpreted. *Hartford-Aetna National Bank* v. *Weaver*, 106 Conn. 137, 142, 137 A. 388. The testator's real intent that the allocator should have complete and unfettered power to designate such charities as he might deem proper to advance the general charitable purpose of promoting the interests of Ridgefield may be gleaned from many clauses contained in the section. Among them are the following: "For the guidance of said Allocator, the following activities are named. . . ." "The foregoing list is not exclusive but is intended to indicate my primary purpose of promoting the interest and training of youth." "It is my desire that said Allocator . . . give careful consideration . . . ." "While it is my preference that said residue be used for permanent facilities, said Allocator may, in his discretion, authorize the use of any part thereof to operating purposes . . . ." "Should the allocator find that all important needs of the character defined herein have been otherwise provided for, he may make, such wider distribution as he may find consistent with my general purposes . . . ." "The Allocator . . . shall have sole responsibility for all allocations after appropriate consideration of the recommendations of his associates."

It is also of considerable significance that the testator provided for the appointment of advisers to the allocator. If the allocator was to be controlled by directions contained in the extrinsic memorandum, what purpose would it serve for him to consult with those advisers? On the whole, the testamentary scheme is plain. The testator was not ready when he drew his will to make bequests to specific charities. His general purpose was to assist those charities which would advance the interest of Ridgefield or the interests of youth generally. He therefore decided to leave the

selection of the particular charities which would serve his general purpose to an allocator, who in making his selections would take into consideration the counsel of his advisers and the information and suggestions contained in the memorandum but would not be bound thereby. The intent of the testator as expressed in the fifteenth section of his will was that the allocator should have full power to select the charitable purposes to which the property should be applied. Accordingly, under the statute, § 6883, the bequest is not void for uncertainty.

The special interest of the plaintiff John W. Nash in this controversy is based upon the last four paragraphs of the fifteenth section of the will. These paragraphs provide that, if the allocation referred to in the preceding paragraphs is not made within a reasonable time after the amount involved has been made known to the allocator and is available, then the rest and residue is bequeathed to John W. Nash. The bequest is made, however, with the "hope that if said John W. Nash shall receive any substantial amount under this section of my will . . . he will make such allocation of this final bequest . . . as may be appropriate" for the assistance of his mother, brother or sisters, if they are in need of it. The will then goes on: "It is my further suggestion that, if a balance of mortgage indebtedness remains on The Nash Apartments after the provisions therefor contained in Section Thirteenth of this will, it would also be consistent with the general purpose of this Section thereof to discharge such remaining indebtedness if that is possible from this residue of my estate without entirely exhausting it for that purpose, or if said John W. Nash shall receive and retain a possible substantial balance of accident insurance payments under the provisions of section Eleventh of this will.

"I impose no legal obligation with respect to said allocations, but have full confidence that my wishes relating thereto will be carried out as far as possible."

The following pertinent facts were found by the trial court: Shortly after the will was admitted to probate, Ralph E. Cramp accepted the responsibilities of allocator imposed upon him by the will. He selected four advisers. He and they from then on held many meetings, made many investigations and gave sincere and thoughtful consideration to the objects and purposes to which the testator referred in the fifteenth section of his will. Within a reasonable time after he was advised by the executor of the amount which would be available for distribution, Cramp made the following allocations: (1) Ridgefield Boys' Club, Inc., $15,000; (2) Ridgefield Local Council of Girl Scouts, Inc., $15,000; (3) Ridgefield Library and Historical Association, $15,000; (4) Troop 49, Mid-Fairfield Council of Boy Scouts of America, $2000; (5) Danbury Hospital, for an endowment for a free bed for residents of Ridgefield, $5000; (6) District Nursing Association of Ridgefield, Inc., $2500; (7) Board of Education of Ridgefield, for the Ridgefield School Band, $2500; (8) Park Commission of Ridgefield, for the erection of a Luther R. Nash memorial grandstand at the Athletic Field at Ridgefield, $9504.63. These allocations exhausted the residuary estate.

The Nash apartments referred to in the will were owned by the testator and the heirs at law of his deceased sister and his deceased brother. At the time of the testator's death, there was a mortgage of $13,700 on the property. Pursuant to the authority contained in the thirteenth section of the will, the executor paid $10,000 on the mortgage, leaving a balance of $3700. The allocator considered whether he should direct the payment of that balance but decided against it. This

must be added to the finding: The allocator's reason for arriving at this decision was that he believed he was precluded from making such an allotment by the fact that the testator had already, in the thirteenth section, indicated that $10,000 was the limit of the amount he wished devoted to the payment of the mortgage, and his intention was to devote his residuary estate to charity.

In the trial court John W. Nash made two principal claims. First, he claimed that the allocations made, particularly those numbered 1, 2, 3, 4 and 6, above, were not in accordance with the directions contained in the will. The basis of this claim is his contention that the expressed intention of the testator was that allocations should be made to various organizations for specific purposes and not for the benefit of the organizations generally and also that they should be for permanent facilities and not for temporary or current expenditures. In the second place, he claimed that the allocator's failure to allocate any sum for the payment of the balance of the mortgage was due to an improper reason. He argued from this that the account showing proposed payments in accordance with the allocator's directions should not be allowed. The trial court overruled these claims and to that this plaintiff has assigned error.

It is true that the allotments to the Ridgefield Boys' Club, the Ridgefield Council of Girl Scouts, the Ridgefield Library, Troop 49 of the Boy Scouts and the Ridgefield District Nursing Association were not restricted to use for permanent facilities. It does not appear, however, that it was the intent of the testator that they should necessarily be so designated. The fifteenth section of the will states that, although it is the preference of the testator that the residue of his estate be used for permanent facilities, "said Allocator

may, in his discretion, authorize the use of any part thereof to operating purposes to meet temporary or development needs." The designations complained of by the plaintiff John W. Nash permit the use of the funds for either capital or current expenditures. That is entirely in accord with the testator's directions. It is also true that these same designations do not compel the organizations to use the funds for any specific purposes. But, here again, there is nothing in the will which requires the allocator to so condition his designations. As has already been pointed out, the intent of the testator was to give the allocator carte blanche in making the allotments, so long as they were made to charitable organizations and agencies which would use the funds for the advancement of the interests of Ridgefield. There can be no question that the organizations designated are of that character.

As regards the second claim of this plaintiff, it is enough to point out that the suggestion that some of the residue of the estate might be applied to the payment of the balance of the mortgage is made in connection with the bequest to him which would become effective only in the event that the allocator failed to function. The power to use funds for that purpose was given by the will to John W. Nash, not to the allocator. It clearly was the intent of the testator that the residue of his estate disposed of by the fifteenth section of the will should go to charity and that no more of his property than the $10,000 authorized by the thirteenth section should be used for the payment of the mortgage unless his bequest to charity failed. The allocator's refusal to allocate anything to the payment of the mortgage was legally correct.

The trial court's conclusions that the fifteenth section of the will was not void for uncertainty and that the allocations made were within the power vested in the

allocator by that section were both correct. It follows that the court was also right in concluding that the payments proposed to be made by the executor in accordance with those allocations were properly allowable credits in the executor's account.

There is no error in either case.

In this opinion the other judges concurred.