THE HARTFORD-CONNECTICUT TRUST COMPANY,
TRUSTEE (ESTATE OF JOSEPHINE H. DAVIS)
*v.* HARTFORD HOSPITAL ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, JS.

164

Argued February 2—decided March 31, 1954

*William K. Cole,* for the plaintiff.

*William L. Beers* and *John N. Reynolds,* for the defendant Frederick E. Lewis.

*James W. Carpenter,* with whom was *Leo Rosen,* for the defendants Doris B. Mathewson et al.

*Arthur L. Shipman, Jr.,* with whom, on the brief, was *Robert Ewing,* for the named defendant.

*Herbert I. Trask* appeared for the defendant Immanuel Congregational Church, Inc.

O'Sullivan, J. This action, brought by the plaintiff trustee for the construction of the will of Josephine H. Davis, comes to this court as a reservation upon a stipulated set of facts. The basic question

deals with the disposition of excess income from the trust created by the testatrix.

The stipulated facts are these: Josephine H. Davis, a resident of Hartford, died testate on February 13, 1924, leaving neither spouse nor issue. Her will, which had been executed shortly before her death, was admitted to probate on February 26, 1924. The estate was subsequently settled, and on December 24, 1924, the final account of the executors was approved and allowed. On the same day, the plaintiff accepted the trusts created by article third of the will and, since then, has continued to act as trustee.

The will consists of four articles. By article first the testatrix directed the payment of debts and funeral expenses, and of taxes assessed against all of the legacies. In article second she set out numerous bequests, designating three corporations and twenty-four individuals as legatees. Among the latter were two sisters, Ruth Lewis and Mary Kimball; two nieces, Anne A. Hoxie and Ella H. Healy; five nephews, Frederick Lewis, Arthur Lewis, Charles Hoxie, George Hoxie and Earle Hoxie; and a grandniece, Josephine Hoxie. She also left legacies to the widows of two deceased brothers.

In article third[1] the testatrix gave in trust to the plaintiff all of her property, including any lapsed

---

[1] "THIRD: All the rest, residue and remainder of my property and estate, both real and personal, and wherever situated, including all lapsed legacies, I give, devise and bequeath to The Hartford-Connecticut Trust Company, of Hartford, Connecticut, and to its successor or successors, in trust, for the following uses and purposes, to wit:

"To hold and manage said property at its discretion, with full power to hold, or to sell the same, or any part thereof, whether real or personal, at public or private sale, to invest the proceeds of such sales without being limited to statutory trust fund investments, and to pay over the net income thereof, preferably semi-annually, in January and July, as follows:

legacies. The income derived from the fund was to
be divided into two equal parts. One part was to be

"A.

"To divide said income into two (2) equal parts or portions, and if
my sister Ruth shall survive me, to pay to her one of said two parts
of such income during her life, and upon her death, or if she shall not
survive me, to pay one-half of her share to her son Frederick, if living,
during his life, and upon his death, to pay the portion of income given
to said Frederick to his wife, Mary Lewis, during her life, and upon
her death, or in case of her prior decease, to add her share of income
to the share of Amy Lillibridge, so long as she shall live. The other
one-half of said one-half of the income, after the death of my sister
Ruth, the trustee shall pay to said Amy Lillibridge, during her life,
and upon her death shall add said part to the part paid to Frederick
Lewis, during his life, and upon his death, to add said part of income
to the part paid to his wife during her life.

"When the said Ruth, her son Frederick, his wife Mary, and the
said Amy Lillibridge have all died, the share or shares of income given
to them, respectively, or to the survivors or survivor of them, shall be
paid to my sister Mary Kimball during her life, and upon the death
of my said sister Mary Kimball said income shall be paid to my cousin
Nellie Belden as long as she shall continue to live.

"B.

"If my sister Mary Kimball shall survive me, to pay to her the
other of said two parts of the income during her life, and upon her
death, or if she shall not survive me, to pay her share of income to
my cousin Mary Lambert during her life, and upon her death, or if she
is not living at the death of my sister Mary, to pay said share of
income to Nellie Lambert, daughter of said Mary Lambert, during her
life, and when Mary Lambert and her daughter Nellie have died, to
pay over said share of income to my cousin Nellie Belden as long as
she shall continue to live.

"C.

"When the last survivor of the beneficiaries named or designated in
paragraphs A and B of the third clause of this my last Will and
Testament shall have died, I authorize, empower and direct the trustee
to distribute the principal of said fund to the Hartford Hospital, for
the benefit of the Old Peoples Home, a department of said Hospital,
and to the Immanuel Congregational Church, Incorporated, of Hart-
ford, for the benefit of the Widow's Home, known as the Ives Home,
now located at 210 and 216 Windsor Avenue, in said Hartford, share
and share alike.

"I direct that the principal be held in trust by the respective insti-
tutions and kept safely invested in securities in which savings banks in
this state are by law permitted to invest, and that the income, and

paid first to the testatrix' sister Ruth Lewis for life and thereafter to others, as recited in a paragraph bearing the heading "A." The other part was to be paid to the testatrix' sister Mary Kimball for life and thereafter to others, as recited in a paragraph headed "B." By a part of another paragraph, headed "C," the testatrix provided that "[w]hen the last survivor of the beneficiaries named or designated in paragraphs A and B of the third clause of this my last Will and Testament shall have died, I authorize, empower and direct the trustee to distribute the principal of said fund to the Hartford Hospital . . . and to the Immanuel Congregational Church, Incorporated . . . share and share alike."

Of the beneficiaries named in paragraph A of article third, only Frederick Lewis survives. The plaintiff is paying to him two-quarters of the total income, to one of which he succeeded on the death of Ruth Lewis, and to the other on the death of the survivor of Ruth Lewis and Amy Lillibridge. All of the beneficiaries named in paragraph B have died, and the one-half of the income payable to them during their lives has been accumulating in the plaintiff's hands and is referred to herein as excess income. The plaintiff seeks answers to the questions recited in the footnote.[2]

---

income only, be used for the general purposes of said institutions, respectively. I direct that no bonds be required of any of said institutions.

"I desire that no part of the income of any of the property given in trust shall be assigned, transferred or pledged by any beneficiary, and in case of any attempted transfer, assignment or pledge of income, the entire income to which such beneficiary may then or thereafter be or become entitled, shall be paid over by the trustee to or for the use of such beneficiary at such times and in such amounts as the trustee at its discretion may deem best."

[2] "A. Is it the duty of the plaintiff to add said excess income, together with any additional such excess income accruing from year to

The parties are in accord that, under the existing conditions, there are three possible ways of disposing of the excess income: (1) It might be accumulated and added to the principal fund; (2) it might be paid to Frederick Lewis as the sole surviving life beneficiary; or (3) it might be regarded as intestate estate, the gift of it having failed. See *Union & New Haven Trust Co.* v. *Sellek,* 128 Conn. 566, 568, 24 A.2d 485.

We first take up the claim of the ultimate remaindermen, the Hartford Hospital and the Immanuel Congregational Church. They maintain that the excess income should go to the principal fund. Whether their position is sound depends primarily upon the testatrix' intent. *Hoadley* v. *Beardsley,* 89 Conn. 270, 280, 93 A. 535. Obviously, no serious difficulty as to the accumulation of income is encountered where a testator has expressed himself on the matter in unambiguous language, but such clarity

---

year hereafter, to the principal of the trusts created by Article Third of the will of Josephine H. Davis?

"B. Is it the duty of the plaintiff to pay said excess income, together with any additional such excess income, to the defendant Frederick E. Lewis during his life?

"C. Is such excess income intestate estate of Joseph[ine] H. Davis?

"D. If the answer to question B or question C is 'Yes,' then at what intervals should said excess income be distributed?

"E. If the answer to question C is 'Yes,' then is it the duty of the plaintiff to distribute said intestate income (1) to such of the intestate successors of Josephine H. Davis as are living at the time of such distribution and to the personal representatives of such of said intestate successors as are then deceased? (2) to such of the intestate successors of Josephine H. Davis as are living at the time of such distribution and to the beneficiary or beneficiaries of the estates of such of said intestate successors as are then deceased? (3) to the persons whom the Court of Probate may determine are entitled thereto?

"F. Are counsel fees and expenses, if allowed by the Court in this action, to be paid from said excess income, or from other income of said trusts, or from the principal thereof, or partly from each of the foregoing, and, if the latter, in what order and proportions?"

of intent does not always occur. For this reason we have adopted the following rule: "[W]here the will discloses an intent that excess income shall accumulate, or its distribution as it accrues will be contrary to the scheme of the will, it should be permitted to accumulate, unless, indeed, such an accumulation would be invalid; . . . where the will discloses an intent that there shall be no accumulation of excess income or such an accumulation would be contrary to the scheme of the testator, or where the will discloses no intent either way, the excess income should be distributed to those entitled to it as it accrues." *New Haven Bank* v. *Hubinger,* 117 Conn. 417, 423, 167 A. 914; *Stempel* v. *Middletown Trust Co.,* 127 Conn. 206, 216, 15 A.2d 305.

The will before us does not disclose an intent either way. It does not contain any express provision for the accumulation of excess income and for its eventual addition to the trust fund, and no argument carrying conviction can be advanced that the scheme of the will requires the trustee to augment the fund with such income. On the contrary, there is every indication that the testatrix completely overlooked the possible occurrence of excess income. This seems apparent from the elaborate manner in which she sought to allot all of the trust income to the many beneficiaries whom she remembered. A mere recital of parts of article third bears this out. Under paragraphs A and B of that article, the testatrix gave one-half of the income to her sister Ruth Lewis and the other half to her sister Mary Kimball. At the death of each sister, her share of the income was given in seriation to a number of life tenants in such a manner that, had they lived and died in the order in which the testatrix enumerated them, excess income from the trust

would have been an impossibility. Thus, upon Ruth's death, her share of the income under paragraph A was to be divided into two equal parts, one going, in each instance for life, first to her son Frederick, then to his wife, Mary, and then to Amy Lillibridge, and the other part going, in similar fashion, first to Amy Lillibridge, then to Frederick Lewis, and then to his wife, Mary. In like manner, the testatrix in paragraph B attempted to dispose of the share of the income originally given to Mary Kimball, the testatrix' sister. Upon Mary Kimball's death, the income which she was to receive was to be given successively for life to Mary Lambert, Nellie Lambert and Nellie Belden. The manner in which the testatrix made Nellie Belden the ultimate life tenant under both paragraphs A and B manifests the testatrix' belief that this final life estate in the entire income was to be the last before the trust terminated. But, like all humans, the testatrix had no gift of prophecy by which she could forecast accurately the events which were to happen, including the fact that Nellie Belden was not to be the last survivor. It is clear, we believe, that the testatrix intended, but inadvertently failed, to dispose of all of the trust income.

As a further indication of a lack of intent on the part of the testatrix that any income should be accumulated, we note that in creating the trust she directed her executors to augment the fund by the addition of all lapsed legacies. The legacies to which she was thus referring were those given to the twenty-seven legatees named in article second. Some significance must be accorded to the fact that in disposing of the trust income, on the other hand, she made no comparable provision for the failure of a legacy of such income. Our conclusion is that ac-

cumulation of the income and its addition to the principal fund are unwarranted under the will.

We now turn to the claim of Frederick Lewis. He asserts that the trust created by article third is a single residuary trust; that the various beneficiaries thereunder were tenants in common; and that the intent of the testatrix, as shown by the absence of anything in the will to the contrary, was that the principal fund was not to be broken up or interfered with until all the beneficiaries had died. Accordingly, he contends that cross remainders among the various life tenants must be implied and that, since he is the sole survivor of all life beneficiaries of the trust, he is entitled, as a cross remainderman, to receive the excess income as long as he lives. See 140 A.L.R. 841, 844.

By classical definition, a cross remainder is a remainder limited after particular estates to two or more persons in several parcels of land, or in several undivided shares in the same parcel of land, in such a way that upon the determination of the particular estates in any of the parcels or undivided shares they remain over to the other grantees, and the reversioner or ultimate remainderman is not let in until the determination of all the particular estates. 1 Swift's Digest 99; 4 Thompson, Real Property (Perm. Ed.) § 2224; 2 Tiffany, Real Property (3d Ed.) p. 58, § 334; 33 Am. Jur. 539; 31 C.J.S. 92; *Addicks* v. *Addicks,* 266 Ill. 349, 352, 107 N.E. 580. A cross remainder may be created by the express language of a will or it may arise by necessary implication. 1 Swift's Digest 100.

Although a cross remainder, as defined, appears to be possible only when land is involved, there is at least one American case in which it was applied to personalty. *Wachovia Bank & Trust Co.* v. *Miller,*

223 N.C. 1, 7, 25 S.E.2d 177. The parties have not stipulated whether the trust in the case at bar is of real or personal property or of both, but neither that deficiency nor the wisdom of adopting the ruling in the *Wachovia* case is of any present moment, since the fact is that no cross remainder to Frederick in the excess income was expressly created and none can arise by necessary implication from the terms of the will now before us. Indeed, the testatrix' intention is clear that Frederick was not to enjoy the use of any of the half of the trust income originally given to Mary Kimball. This is a natural inference to be drawn from the details of the disposition made of the income under paragraphs A and B. On the one hand, the testatrix directed a gift over to Mary Kimball and Nellie Belden (two of the beneficiaries named in paragraph B) of that half of the income which was disposed of under paragraph A, while, on the other hand, the will is silent on a reciprocal disposition, to Frederick or to any other beneficiary named in paragraph A, of the income referred to in paragraph B. Thus, Mary Kimball and Nellie Belden, beneficiaries under paragraph B, were obviously more favored by the testatrix than any of those named in paragraph A. In the face of the express cross interest given to Mary Kimball and Nellie Belden, great importance must be attributed to the failure of the testatrix to give a comparable interest to Frederick.

Counsel has forcefully urged upon us that the testatrix is presumed to have intended no intestacy as to any part of her estate. It is true that a construction of a will which will avoid intestacy is to be sought and that, to this end, the presumption must be entertained that the testatrix did not intend intestacy to mark any of her estate. *Beardsley* v.

*Johnson,* 105 Conn. 98, 112, 134 A. 530. " 'Every intendment is to be made against holding a man to be intestate, who sits down to dispose . . . of his property.' *Warner* v. *Willard,* 54 Conn. 470, 472, 9 A. 136." *Allen* v. *Tyson,* 133 Conn. 699, 704, 54 A.2d 490. But all artificial rules of construction, such as that dealing with the presumption under discussion, must yield to the intent of the testatrix. *Glover* v. *Stillson,* 56 Conn. 316, 318, 15 A. 752. This is properly so because all such rules are to assist in finding the intent, not to defeat it. An implication of a cross remainder can never arise if, as here, it is inconsistent with the provisions of the will. *Polsky* v. *Continental National Bank,* 110 F.2d 50, 57; *Anderson* v. *Simpson,* 214 Ky. 375, 380, 283 S.W. 941; Restatement, 1 Property 359, § 115. The only conclusion to which we can come on the basis of the foregoing reasons is that there is no cross remainder to Frederick Lewis.

It naturally follows that the so-called excess income on hand is intestate property and, as such, should be turned over at once to the heirs at law of the testatrix, who are to be ascertained as of her death. *City Bank Farmers Trust Co.* v. *Whitten,* 137 Conn. 192, 195, 75 A.2d 383. Since the identities of those who qualify appear sufficiently in the stipulated facts, the trustee is under no affirmative duty to apply to the Probate Court for a determination of what is undisputed. As regards the payment of excess income which will be available in the future, the trustee may distribute it semiannually, in January and July. This arrangement will dovetail properly with payments of the net income made under the will.

Our advice is also sought as to the source of payment of such counsel fees and expenses as may be

allowed by the trial court. We have previously had occasion to pass upon this subject, although in only one instance did we indulge in any extended discussion of it. *Ansonia National Bank* v. *Kunkel,* 105 Conn. 744, 756, 136 A. 588; *Mallory* v. *Mallory,* 72 Conn. 494, 504, 45 A. 164; *Beer* v. *Squires,* 102 Conn. 503, 511, 129 A. 382; *Hartford National Bank & Trust Co.* v. *Yearly Meeting,* 137 Conn. 648, 657, 81 A.2d 104. Because some uncertainty upon the subject still appears to exist, we give our reasons for the answer to the question under consideration.

Section 7997 of the General Statutes provides that "[i]n any action brought to a court of equitable jurisdiction for the construction of a will, by any person acting in a fiduciary capacity thereunder, there shall be allowed to each of the parties to such proceeding such reasonable sum for expenses and counsel fees as such court, in its discretion, shall deem equitable; which allowance shall be taxed as costs in the cause, to be paid out of such estate." The payment of expenses and counsel fees must, then, be made out of "such estate," and the problem is to determine what these two words mean.

The prototype of § 7997 was enacted in 1870. Public Acts 1870, c. 74.[3] The provisions of that public act were held to be "merely declaratory of the existing rules of chancery practice." *Security Co.* v. *Pratt,* 65 Conn. 161, 175, 32 A. 396. Under such

---

[3] "[I]n any suit brought to the superior court, as a court of equity, by the executors of any will, alleging that doubts have arisen as to the meaning and intent of such will, and asking said court for advice as to the proper construction thereof, or directions as to their duties respecting the estate disposed of by such will, there shall be allowed to each of the parties to such proceeding such reasonable sum for expenses and counsel fees as said court, in its discretion, shall deem proper, and said allowance, when made, shall be taxed as costs in said cause to be paid out of said estate."

practice, the general estate of a testator is ordinarily liable for expenses and counsel fees, although, if the action relates to particular property or to a particular fund which has been severed from the bulk of the estate, expenses and fees may properly be ordered against that property or fund, if to do so would be equitable. See *Deane* v. *Home for Aged Colored Women*, 111 Mass. 132, 135; *Straw* v. *Societies*, 67 Me. 493, 495; *Noe's Administrator* v. *Miller's Executors*, 31 N.J.Eq. 234, 238; 57 Am. Jur. 669, § 1033.

Whether in the case at bar the principal or the income of the trust or both are to be charged with the payment of expenses and counsel fees is to be ascertained and determined on equitable principles. The manner in which payment is allocated rests within the sound discretion of the court, which will not be overruled in the absence of an abuse of that discretion. Occasionally, situations will arise where, as a matter of law, there can be but one source to which equity should look for payment. Such a situation is presented in the case at bar. The excess income, when suit was instituted about a year ago, amounted to $6217.28. It is this estate which, in equity, ought to bear the charges in question.

We answer the questions upon which our advice is asked as follows: "No" to questions A, B, E(2) and E(3); "Yes" to questions C and E(1); "Semiannually in January and July" to question D; "From the excess income" to question F.

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.