HARTFORD NATIONAL BANK AND TRUST COMPANY, TRUSTEE (ESTATE OF SARAH J. HENDEE) *v.* ELIZABETH RICE HARVEY ET AL.*

INGLIS, C. J., O'SULLIVAN, WYNNE, DALY and SHEA, Js.

* The defendants are Elizabeth Rice Harvey, grandniece of the testatrix; Mary Gaskell Harvey, great-grandniece; Connecticut Bank and Trust Company and John H. Bradin, executors under the will of Hetta E. Bradin, sister; John H. Bradin, nephew; John H. Bradin, Jr., grandnephew; Beatrice B. Hendee, executrix under the will of Lucius Hendee, brother; Philip Abner Hendee, nephew; Hartford National Bank and Trust Company, executor under the will of Mary Vail Rice, niece.

Argued January 5—decided February 28, 1956

*Henry S. Robinson, Jr.,* for the plaintiff.

*John W. Joy,* for the named defendant et al.

*Robert F. Taylor,* for the defendants John H. Bradin et al.

*Arthur L. Shipman, Jr.,* for the defendants Philip A. Hendee et al.

O'SULLIVAN, J. Sarah J. Hendee, a resident of Hartford, died in 1933, leaving a will which was

admitted to probate on January 9, 1934. At her death, her heirs at law were Lucius Hendee, a brother, who under the will took two-fourteenths of the residue of the estate; Hetta E. Bradin, a sister, who took most of the furniture and jewelry and $30,000 outright; and Mary Vail Rice, the daughter of a deceased brother, who took a diamond ring, $5000 and the life interest of a trust consisting of ten-fourteenths of the residue.

The tenth article of the will,[1] the source of this

---

[1] "ARTICLE X. I direct that all of the rest, residue and remainder of my property, real and personal, of which I may die seized or possessed or in which I may have an interest at the time of my death, wherever the same may be located or found, be divided into fourteen (14) equal parts; and I give two (2) of such parts to my brother, Lucius Hendee, to be his absolutely, or, if he should predecease me, then I give said two (2) parts to my said brother's son, Philip Abner Hendee, to be his absolutely; I give one (1) of such parts to my nephew, John Hendee Bradin, to be his absolutely; and I give one (1) of such parts to my nephew, Philip Abner Hendee, to be his absolutely.

"I give and devise the remaining ten (10) parts of the residue of my estate to The First National Bank of Hartford, in trust, nevertheless, to hold and manage, invest and reinvest, without regard to the limitations imposed upon the investment of trust funds by the laws of the State of Connecticut; and to collect the income therefrom, and, after the payment of taxes and other charges incident to the administration of said fund, to pay over the net income, at least as frequently as each three months, to my niece, Mary Vail Rice, and, in my Trustee's discretion, such amount in addition to the income as my said Trustee may consider reasonably necessary for the comfortable support and maintenance of my said niece during her life. Upon the death of my said niece, I direct my Trustee to continue to hold this fund in its hands, and to use and expend for the benefit of, or to pay over to, my grandnieces, Elizabeth Rice and Sally Rice, the net income from this fund, in equal shares, and such amounts in addition to the net income as my said Trustee may consider reasonably necessary for the proper support, maintenance and education of my said grandnieces.

"Upon the death of either of my said grandnieces, leaving her surviving issue, I direct that my said Trustee shall expend for, or pay over to, such issue, in equal shares, one-half (½) of the net income from this trust fund, and shall continue to pay to my surviving grand-

litigation, provides that upon the death of Mary Vail Rice the trust of which she had the life use is to continue and the net income is to be paid over, in equal shares, to her daughters, Elizabeth Rice and Sally Rice, for life; that the trustee may invade the principal and pay over to Elizabeth and Sally, in addition to the net income, such amounts as the trustee may consider reasonably necessary for their proper support, maintenance and education; that upon the death of either Elizabeth or Sally, leaving surviving issue, the trustee is to pay over to such issue, in equal shares, one-half of the net income of the fund and to pay over the other half to the survivor of Elizabeth and Sally; that upon the death of that survivor, the fund is to be divided in equal shares per stirpes among the surviving issue of Elizabeth and Sally; and that, if both Elizabeth and Sally die leaving no surviving issue, the fund is to be distributed equally, per stirpes, to the then surviving issue of the testatrix' "brothers and sisters." Mary Vail Rice died in 1953. Sally Rice, who after 1933 married a man named Cummings, died in 1952, leaving no issue. Elizabeth Rice, who is now Mrs. Harvey, is alive and is the mother of Mary Gaskell Harvey, born in 1948. Lucius Hendee died in 1938, and Hetta E. Bradin died in 1943. Both Lucius and Hetta left issue who are still alive.

---

niece, or expend for the benefit of my said surviving grandniece, the remainder of such income and such amounts in addition to income as my Trustee may deem proper, as hereinbefore provided, so long as my said surviving grandniece shall live; and upon the death of my surviving grandniece, I direct my Trustee to distribute this fund then remaining in my said Trustee's hands, in equal shares, per stirpes, among the then surviving issue of my said grandnieces.

"Should both of my grandnieces die, leaving them surviving no issue, I direct that this trust fund be distributed equally, per stirpes, to the then surviving issue of my brothers and sisters, to be theirs absolutely."

The plaintiff, as successor trustee of the trust established by the testatrix, has brought this action seeking a construction of the tenth article. All of the parties have joined in a reservation to this court on stipulated facts, and the questions for which answers are sought are stated below.[2]

Had Sally died leaving issue surviving, there would have been no problem to solve. Since, however, she died without issue, her death raises the question whether Elizabeth has now become entitled to the entire income of the fund for life, as she and her daughter Mary contend, or whether, as main-

---

[2] "(a) Should the plaintiff continue to hold in trust all of the trust estate during the life of Elizabeth Rice Harvey and pay to Elizabeth Rice Harvey all of the net income therefrom and such amounts in addition to income as the plaintiff may deem proper?

"(b) Should the plaintiff continue to hold in trust all of the trust estate during the life of Elizabeth Rice Harvey and pay to Elizabeth Rice Harvey one-half of the income therefrom and such amounts in addition to such one-half of the income as the plaintiff may deem proper?

"(c) If the answer to (b) be yes, should the plaintiff during the life of Elizabeth Rice Harvey accumulate and add to the principal of the trust estate the one-half of the net income not to be paid to Elizabeth Rice Harvey during her life?

"(d) If the answer to (b) be yes and the answer to (c) be no, to whom and in what proportions should the plaintiff during the life of Elizabeth Rice Harvey pay the one-half of the net income not to be paid to Elizabeth Rice Harvey?

"(e) Should the plaintiff divide the principal of the trust estate into two equal parts and continue to hold in trust one of said equal parts during the life of Elizabeth Rice Harvey and pay to Elizabeth Rice Harvey the net income from said equal part and such amounts in addition to the net income as the plaintiff may deem proper?

"(f) If the answer to (e) be yes, to whom and in what proportions should the plaintiff pay the principal of the equal part therein referred to which the plaintiff is not to continue to hold in trust for Elizabeth Rice Harvey during her life?

"(g) Upon the death of Elizabeth Rice Harvey, to whom and in what proportions should the plaintiff pay the principal of the trust estate then held by it?"

tained by all the other defendants, the one-half of the income which was to be paid to Sally is intestate property, distributable to the heirs of the testatrix.

The gift of the income to Elizabeth and Sally created in them a tenancy in common. *Houghton* v. *Brantingham,* 86 Conn. 630, 639, 86 A. 664; *Bill* v. *Payne,* 62 Conn. 140, 142, 25 A. 354. The right of survivorship is not an incident to that type of tenancy. *Mahoney* v. *Mahoney,* 98 Conn. 525, 531, 120 A. 342. If, then, Elizabeth is to enjoy for life the one-half of the income given to her sister Sally, it will not be due to any right of survivorship. It will be occasioned, if at all, by reason of a cross remainder which, Elizabeth insists, attaches to her gift by virtue of the provisions of the will. *Hartford-Connecticut Trust Co.* v. *Gowdy,* 141 Conn. 546, 551, 107 A.2d 409. The classical definition of a cross remainder is a remainder limited after particular estates to two or more persons in several parcels of land, or in several undivided shares in the same parcel of land, in such a way that upon the determination of the particular estates in any of the parcels or undivided shares they remain over to the other grantees, and the reversioner or ultimate remainderman is not let in until the determination of all the particular estates. *Hartford-Connecticut Trust Co.* v. *Hartford Hospital,* 141 Conn. 163, 171, 104 A.2d 356. It does not appear whether the trust in the case at bar is of realty or personalty, but that is of no moment, since cross remainders are applicable to both. *Wachovia Bank & Trust Co.* v. *Miller,* 223 N.C. 1, 7, 25 S.E.2d 177; *In re Hudson,* 20 Ch. D. 406, 415; 2 Jarman, Wills (8th Ed.) p. 676.

Cross remainders may be created by the express language of a will or they may arise by necessary

implication. 1 Swift's Digest 100. If they are to be found in the will before us, they are the result of necessary implication, since the will is utterly devoid of any language expressly creating them. Cross remainders are not ordinarily implied where the gifts of life interests are to designated individuals rather than to a class, and still more rarely do they arise where the gifts to designated individuals are to be enjoyed by them in equal shares. See *Hartford-Connecticut Trust Co.* v. *Gowdy,* 141 Conn. 546, 551, 107 A.2d 409; *Morris* v. *Bolles,* 65 Conn. 45, 53, 31 A. 538; 4 Thompson, Real Property (Perm. Ed.) § 2224. The reason for this is that such gifts to such individuals in such proportions ordinarily indicate the absence of an intent on the part of the testator that a limitation over of a remainder interest should attach to the gifts. But where his intent, when properly ascertained, will be defeated unless cross remainders are utilized, they will be implied. For the cardinal rule of all construction is to find and effectuate the intent of the testator. *Chase National Bank* v. *Guthrie,* 139 Conn. 178, 182, 90 A.2d 643; *Allen* v. *Almy,* 87 Conn. 517, 525, 89 A. 205. In every case, the question of implied gifts is one of intention. *Peckham* v. *Lego,* 57 Conn. 553, 560, 19 A. 392. It inevitably follows that the phraseology adopted by the testatrix in setting up the gifts to Elizabeth and Sally, although worthy of consideration in the search for the intent of the testatrix, is by no means controlling if that intent, drawn from other sources in the will, requires the implication of cross remainders to carry out her wishes.

The testatrix foresaw that both Elizabeth and Sally might die leaving issue and, on the basis of that foresight, directed that, upon the death of

either, the trustee should turn over to her issue, as long as the other lived, that part of the income which the one deceased had received during her life. And, as has been pointed out previously, if Sally had died leaving issue, the problems presented by this litigation would not have arisen, because Sally's share of the income would go, under the provisions of the will, to her issue. The testatrix also foresaw the possibility that Elizabeth and Sally might die without issue, but she only partially met this contingency, since the extent of her directive dealt solely with the ultimate distribution of the trust principal. She neglected to give the trustee any express instructions as to what it should do with the part of the income given, during life, to the grandniece dying without issue. In spite of the forcefully argued claim of those representing the Bradin and Hendee branches[3] that the share of the income given to Sally should be treated as intestate estate, we are satisfied that the testatrix intended Elizabeth, as the surviving grandniece, to have Sally's share of the income in the event of her death, and that cross remainders between them should, therefore, be implied, since only by those devices may the intent of the testatrix be fulfilled. 2 Simes, Future Interests, p. 259; 2 Tiffany, Real

---

[3]

| Testatrix | Brother | Brother | Sister |
|---|---|---|---|
| Sarah J. Hendee d. 1933 | Abner Hendee (Predeceased Testatrix) | Lucius Hendee d. 1938 | Hetta E. Bradin d. 1943 |
| | Mary Vail Rice d. 1953 | Philip Abner Hendee | John H. Bradin |
| Elizabeth Rice Harvey | Sally Rice Cummings d. 1952 | | John H. Bradin, Jr. (Minor) |
| Mary Gaskell Harvey (Minor) | | | |

Property (3d Ed.) p. 59. Several considerations have led us to that conclusion.

In the first place, there is a principle of law that cross remainders may be implied if the will discloses an intent that no person shall inherit any part of the gift in question, or take it by way of remainder, as long as any of the recipients of the gift or any of their issue is alive. *Hungerford* v. *Anderson,* 4 Day 368, 372. The reason for the principle, as Swift puts it, is this: "A cross remainder by implication in a devise, is where an estate is given to several devisees and the heirs of their bodies, and if they all die without issue of their bodies, remainder to some other person. Now the remainderman cannot take, unless all the devisees die without issue. There [being] no provision made who shall take the estate of those who die without issue before the rest, it follows then by necessary implication, it must be the other devisees, for there appears to be no intention in the will, that any person shall inherit any part of the estate, or take it by way of remainder, as long as any of the devisees or their issue are alive." 1 Swift's Digest 100. It requires no uncanny insight to see that the testatrix appears to have been particularly fond of her niece, Mary, and her grandnieces, Elizabeth and Sally. As indicative of this attitude, she devoted the vast proportion of the residue of her estate to the establishment of a trust solely for their benefit. She divorced those in the other branches of her family from any enjoyment of the fund while it continued as a trust, and, except in the event that no issue capable of taking as ultimate remaindermen survived in the Rice branch, she excluded, so far as the express provisions of the will are concerned, her other heirs from receiving any part of the fund when the time

came to distribute it upon the termination of the trust. Her intent, as thus disclosed, makes operative the legal principle under discussion.

In the second place, the requisite for the implication of cross remainders most often emphasized in judicial opinions is that the testator has directed that the gift shall all go over at one time. 2 Simes, op. cit., p. 262. In the will at bar, the fund is to be kept intact until the survivor of Elizabeth and Sally dies. When that event occurs, it is all to be distributed at one time to those entitled to it.

The consideration which has been most persuasive, however, is found in the power given by the testatrix to the trustee to invade the principal of the fund when that action is reasonably necessary for the proper support, maintenance and education of the survivor of the grandnieces. This power was not circumscribed except by the purpose for which it could be exercised. The testatrix did not limit it to one-half of the fund—a course which, in all probability, she would have pursued had she intended that the survivor should not enjoy the share given to the one who died first. On the contrary, the testatrix went so far as to authorize the trustee to invade the entire fund, even to its ultimate destruction, if such invasion was reasonably necessary to provide, in addition to any income received, for the support, maintenance and education of the surviving grandniece. This directive strongly indicates an intent that Elizabeth, as the survivor, should enjoy the fund to its fullest extent. If this is so, it would include her right to receive the entire income.

Finally, the result we have reached promotes the principle, founded in public policy, that if a provision in a will is fairly open to two constructions,

that which avoids intestacy is to be preferred. *Bridgeport-City Trust Co.* v. *Lister,* 140 Conn. 147, 156, 98 A.2d 811; *Nash* v. *Danbury National Bank,* 138 Conn. 676, 684, 88 A.2d 397. And the result is further fortified by the presumption that the testatrix did not intend intestacy as to any part of her estate. *Hartford Bank & Trust Co.* v. *Yearly Meeting,* 137 Conn. 648, 654, 81 A.2d 104.

It has been urged upon us that *Hartford-Connecticut Trust Co.* v. *Gowdy,* 141 Conn. 546, 107 A.2d 409, employs for ascertaining the existence of cross remainders a test which, if applied to the will before us, would lead to a conclusion contrary to that to which we have come. In the field of testamentary construction, precedents are usually inconclusive, since the same or substantially similar expressions seldom occur in different wills. *Brown* v. *Potter,* 114 Conn. 441, 445, 159 A. 275. Precedents are entitled to little weight where they do not involve precisely analogous testamentary language, used by testators surrounded by like circumstances at the execution of their wills. *Gilman* v. *Gilman,* 99 Conn. 598, 613, 122 A. 386; *Hartford Trust Co.* v. *Wolcott,* 85 Conn. 134, 138, 81 A. 1057; *Russell* v. *Hartley,* 83 Conn. 654, 660, 78 A. 320. Each will must ordinarily stand by itself. *Cumming* v. *Pendleton,* 112 Conn. 569, 574, 153 A. 175. The will in the *Gowdy* case, supra, is clearly distinguishable from the one now before us.

The reservation also presents the question of the proper distribution of the fund upon the termination of the trust. If it should happen that at the time of Elizabeth's death no issue of hers was surviving, the takers of the principal of the fund might well be different from those who would take in the event that she did leave issue. Accordingly, it is

impossible to answer the question until after Elizabeth has died. There is another consideration to be noted. As has previously been stated, the fund may, before Elizabeth's death, be wholly depleted under the stress of providing for her support, maintenance and education. If the fund should, by any chance, become exhausted—improbable though that may be—we would be answering a moot question. This we refuse to do. *Trowbridge* v. *Townshend*, 112 Conn. 104, 114, 151 A. 345.

We answer "Yes" to question (a). This will sufficiently dispose of all other questions except (g), which we refuse to answer.

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.